THE PEOPLE OF THE STATE OF NEW YORK ex rel. LILLIE STEWART, Respondent, v. JAMES A. PASCHAL and JOSIA M. PASCHAL, Appellants.

*Right of orphan asylums to bind out children — chapter 438 of the Laws of 1884 — record of a conviction, as evidence — power of the Supreme Court over the custody of infants.*

When the mother of a child, placed in an orphan asylum but not committed to its care by any instrument in writing, or by any mayor, county judge, or superintendent or overseer of the poor, has paid for its support while in the asylum, there has not been an absolute surrender of the child to the asylum

in such a manner as to give the asylum jurisdiction, under chapter 438 of the Laws of 1884, to bind out the child.

An error, if any, in reading in evidence, under the defendant's objection, in a proceeding by *habeas corpus* to remove a child from the custody of the person to whom it has been bound out by an orphan asylum, a record of the defendant's conviction of a crime, is cured by the defendant's subsequently going upon the stand as a witness in his own behalf. (Code Civ. Pro. § 832.)

The ancient power of the Supreme Court to control the custody of infants by the writ of *habeas corpus* has not been taken away by the enactment of section 12 of chapter 438 of the Laws of 1884, which provides for an application to the Surrogate's Court of the county in which the foster parent resides, for a cancellation of agreements of adoption. If the statute of 1884 is broad enough to afford relief on the ground that the foster parents of an adopted child are immoral or improper persons to have the custody of a child, it but affords a concurrent remedy to that of an application to the Supreme Court by writ of *habeas corpus*.

APPEAL by the defendants, James A. Paschal and Josia M. Paschal, from a final order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of Monroe county on the 4th day of June, 1892, in proceedings upon a writ of *habeas corpus*, awarding to the relator the custody of her daughter, Mabel Stewart, otherwise known as Mabel Paschal.

*John F. Dorthy*, for the appellants.

*George A. Carnahan*, for the respondent.

HAIGHT, J.:

Mabel was eight years of age on the thirty-first day of March last. On the 15th day of June, 1885, she was placed in the Rochester Orphan Asylum, and there continued to reside until the 22d day of November, 1886, at which time she was taken from the asylum by the defendants, and on the 8th day of June, 1887, William N. Sage, as president of the asylum, executed and delivered to the defendants an instrument in writing purporting to apprentice her to them until she should become of the age of eighteen years. During the winter of 1885 and 1886, and up to about July, the relator was employed in the asylum, and during that time applied a portion of her wages equivalent to one dollar per week to the support of Mabel, and thereafter paid the asylum three dollars in July, four dollars in August, six dollars in October, five dollars in Novem-

ber, three dollars in December, to be applied in the support of Mabel and the relator's other child, Grover.

The referee found as facts that the custody, control and guardianship of the child were never surrendered to the asylum by the mother by any instrument in writing, that the child was never committed thereto or placed therein by any magistrate or poor officer, or in any other legal manner, and that provisions had been made by the relator for the support of Mabel in the asylum within the period of one year next preceding the 8th day of June, 1887, the date at which the defendants claimed to have apprenticed her. The referee further found as facts that the defendant, James A. Paschal, with the knowledge and assistance of Josia M. Paschal, maintained and conducted a hotel known as the " Manning House," No. 153 Andrew street, in the city of Rochester, from September, 1888, to April, 1891, for the purposes of prostitution; that James A. Paschal had been twice duly convicted in the Police Court of the city of Rochester of the offense of keeping a disorderly house, or house of prostitution. And that the defendants are improper persons to have the care and custody of the child.

We are satisfied from a careful reading of the evidence that these findings should be sustained.

The Laws of 1884, chapter 438, section 5, provides that any corporation specified in the first section of the act may bind out an indigent or pauper child which shall have been absolutely surrendered to the care and custody of the corporation in pursuance of the provisions of the first section of the act, or which shall have been placed in the corporation as a pauper, in pursuance of the second provision of the act, or shall have been left to the care of the corporation with no provisions by the parent, relative or guardian for its support for a period of one year. The first section of the act provides that the guardianship of the person and the custody of an indigent child may be committed to any incorporated orphan asylum, or other institution incorporated for the care of orphan, friendless or destitute children, by an instrument in writing, signed by the parents of such child, or if both parents be dead and there is no legal guardian of the child, by the mayor of the city or the county judge of the county in which such asylum shall be located, upon such terms, for such time, and subject to such conditions as may be agreed upon by the parties to such written

instrument. The second section of the act makes provision for the commitment of such child or children to an asylum by the superintendent or overseer of the poor. Mabel was not committed to the asylum by any instrument in writing, nor by any mayor, county judge, superintendent or overseer of the poor. Her mother had not abandoned her for the space of one year, but instead thereof had continued to pay for her support down to the time that she was taken from the asylum by the defendants in November, 1886. There had not, therefore, been an absolute surrender of the child to the asylum in such a manner as to give it jurisdiction to bind or apprentice her to the defendants. And the attempt of the president so to do is consequently void.

Upon the trial the record of conviction of the defendant, James A. Paschal, was read in evidence under his objection. It is now claimed that it was not proper evidence against him in this proceeding. He, however, subsequently went upon the stand as a witness in his own behalf and gave material testimony. The record of his conviction then became competent evidence as bearing upon his credibility. (Code Civ. Pro. § 832.)

The error, if any, was by that act cured.

It is also contended that the relator should have proceeded under the Laws of 1884, chapter 438, section 12, instead of by *habeas corpus*. That section provides for an application to the Surrogate's Court of the county in which the foster parent resides for a cancellation of the agreement of adoption and for the termination of the relation of parent and child, on the ground of cruelty, misusage, refusal of necessary provisions or clothing or inability to support and maintain or educate the child, or of any violation of duty on the part of such foster parent towards such child. If the provisions of this statute are broad enough to afford relief on the ground that the foster parents are immoral and improper persons to have the custody of a child, it but affords a concurrent remedy, for the statute does not take from the Supreme Court any of its ancient powers or jurisdiction under a writ of *habeas corpus*.

The order should be affirmed, with costs.

All concurred.

Order appealed from affirmed, with costs.