(8 Misc. Rep. 388.)

### SIMMONS et al. v. BURRELL et al.

(Supreme Court, Special Term, Niagara County. ·May 4, 1894.)

1. WILLS—CONSTRUCTION—JURISDICTION OF EQUITY.
   Equity has jurisdiction of an action to construe a will, where it is necessary to pass on the validity and effect of a trust contained therein, whether plaintiff seeks to maintain the trust, or to destroy it.

2. SAME—WHEN TRUST IS INVOLVED.
   A will giving to a church a sum of money "in trust * * * to apply the interest thereon each year to the purchase of clothing * * * for poor children, to enable them to attend the Sabbath school at such church," creates a trust, and therefore equity has jurisdiction of an action to construe the will.

3. CHARITIES—UNASCERTAINED BENEFICIARY.
   The English doctrine that devises and bequests for the support of charity are not void, though defective for want of an ascertained beneficiary, does not obtain in New York.

4. SAME—VALIDITY OF BEQUEST.
   A bequest to a church to purchase clothing "for poor children, to enable them to attend the Sabbath school at such church," is void for want of an ascertained beneficiary.

5. SAME—RIGHT OF MISSIONARY SOCIETY TO TAKE LEGACY.
   A missionary society incorporated under an act (Laws 1871, c. 21) which provides that it may take and hold by bequest, etc., "subject to the provisions of law relating to devises and bequests," is within Laws 1848, c. 319, § 6, declaring that missionary societies formed thereunder cannot take under a will not executed at least two months before testator's death.

6. WILLS—LEGACY TO BE DIVIDED AMONG SEVERAL—PARTIAL FAILURE.
   Where two of three societies to which a bequest was made, "to be equally divided between them, share and share alike," are incapable of taking, the third society only takes the share it would have taken had there not been a failure as to the other two.

7. ADOPTION—RIGHT OF ADOPTED CHILD TO INHERIT.
   Laws 1873, c. 830, as amended by Laws 1887, c. 703, provides that in case of adoption the parties shall sustain to each other the legal relation of parent and child, "including the right of inheritance," and that "the heirs and next of kin of the child so adopted shall be the same as if the child was a legitimate child of the person so adopting." *Held,* that the word "inheritance" applies to personalty as well as to realty.

8. SAME—RIGHT OF CHILD ADOPTED BEFORE ENABLING ACT.
   Laws 1873, c. 830, prescribes the mode of adoption to be followed thereafter, and (section 13) ratifies adoptions previously made, and provides that no child that has been adopted shall be deprived of the rights of adoption, except on a proceeding for that purpose. Section 10 declares that an adopted child shall have the same rights as a natural child, except the right of inheritance. Laws 1887, c. 703, amends section 10 by conferring the right of inheritance. *Held,* that a child adopted before the passage of the act of 1873 may inherit as provided by the act of 1887.

Action by Baxter Simmons and others against Myron L. Burrell, as executor of the last will of Edward J. Simmons, and others, for a construction of the will.

D. G. Wellington, Joseph Mason, and C. A. Hitchcock, for plaintiffs.

Q. G. T. Parker, for executor, and defendant Lillie M. Simmons.

Ellsworth, Potter & Storrs (Judge Potter, of counsel), for defendant American Missionary Association.

John E. Pound, for defendant First Free Congregational Church of Lockport.

WARD, J. This action was brought by the plaintiffs to obtain a judicial construction of the last will and testament of Edward J. Simmons, late of the city of Lockport, in the county of Niagara, N. Y. On the 26th of August, 1892, Edward Simmons made, executed, and published his last will and testament, and in and by which the defendant Myron L. Burrell was appointed sole executor thereof; and on the 27th day of September, 1892, he (said Simmons) departed this life, being a resident of the said city of Lockport. This will was admitted to probate on the 21st of November, 1892, by the surrogate of Niagara county; and letters testamentary thereon were issued to Burrell, who assumed the duties of his trust, and is still such executor. The testator left real and personal property of the value of about $40,000, of which about $20,000 was real estate. The will empowered the executor to sell the real estate, except the testator's residence, and dispose of the property as therein appears. After providing for the payment of his debts, in the first clause, he, by the second, third, fourth, and fifth clauses, makes provision, by way of legacies, for the defendant, Lillie M. Simmons, whom he designates in the will as "the person known as Lillie M. Simmons, and as my adopted daughter." He sets apart certain sums for her use during life, and also the residence of the deceased in Lockport, some of which legacies are to be hers absolutely, in certain contingencies, and a relative, Mary Ann Belden, to have a home in the house, and certain support out of these legacies. The sixth clause gives to his brother Walter Simmons a weekly support, and the interest on certain funds which are set apart for him, and the principal, or so much thereof as should be needed for his support; and the remainder of that sum should become a part of the residuary estate, under the thirteenth clause of the will. The remainder of certain legacies given to Lillie should also go to the residuary estate under the thirteenth clause. By the seventh, eighth, ninth, tenth, eleventh, and twelfth clauses, certain legacies were given to his relatives and to religious organizations; the ninth being to the First Free Congregational Church of Lockport, which will fully appear hereafter. The thirteenth clause is as follows:

"Thirteenth. I give, devise, and bequeath all the rest, residue, and remainder of my estate and property, of every name, kind, and description, to the American Congregational Union, incorporated in the city of New York in the year 1853, its successors and assigns; to the American Home Missionary Society, formed in the city of New York in the year 1826; and to the American Missionary Association of New York City,—to be equally divided between them, share and share alike, to be used by said three societies, and applied to the charitable uses and purposes of said societies, respectively."

Aside from the properties that fall into this clause, as above stated, there were ten or twelve thousand dollars of property that was disposed of directly to these corporations by this clause. The deceased left no wife or children, except his adopted child, Lillie, or

descendant from children, or father or mother, but left brothers and sisters, nephews and nieces, at whose instigation this action was commenced, claiming to be the next of kin of the deceased. Up to the time of the trial the executor had sold and invested in real estate securities, or had the proceeds of the sales in some form, amounting to about $11,500. The debts of the deceased did not exceed $1,000. The complaint demands relief, among other things, that the legacies to the corporations in the thirteenth clause be declared invalid, and that they take nothing under the will, the reason being given in the complaint that the will had not been executed two months before the death of the testator. It also demanded that $500 of the legacy given to the Society of the First Free Congregational Church of Lockport be adjudged invalid, and that the court adjudge that the defendant Lillie M. Simmons is not the daughter, by legal adoption, of the deceased, and not entitled to any right, title, or interest in the estate of the deceased, except such portions of the estate as are specially devised and bequeathed to her by the will itself, and that the plaintiffs be adjudged to be the heirs and next of kin of the deceased, and entitled to all the property that came into the thirteenth or residuary clause. The defendant Lillie answered that she was legally adopted by the deceased under the laws of this state, and thereby became and is his heir at law. The corporations mentioned in the thirteenth clause severally answered, insisting upon their rights, respectively, to the property devised and bequeathed to them. The executor also answered, insisting upon the validity of all of the provisions of the will. The defendant Lillie came into the family of the deceased when she was about two years of age; took the name of Simmons; was treated by the deceased and his wife as their daughter, in every respect. She was not even aware that she was not their daughter until about 14 years of age. She remained at home with the deceased, and in his family, until his death, discharging faithfully the duties of a daughter in the household; she calling the deceased and his wife "father" and "mother," and they calling her their daughter, and she being recognized as such among friends of the parties, and in the will of the deceased. The manner of her adoption, and the grounds upon which she predicates her claim that she is an heir and next of kin of the deceased, will be considered hereafter.

Some of the defendants insist that the plaintiffs, as the assumed heirs and next of kin of the deceased, have no standing in court, and have no right to maintain this action, and cite Whitney v. Whitney, 63 Hun, 59, 18 N. Y. Supp. 3, and Reed v. Williams, 125 N. Y. 560, 26 N. E. 730. This contention is based upon the assumption that all the questions involved are purely legal and involve no trust, such as invokes the jurisdiction of a court of equity, and do not present a case authorized by sections 1866 and 1867 of the Code of Civil Procedure. An examination of the complaint and of the will can leave no doubt but what this action was properly brought, as to some of the questions involved. There are certainly trusts imposed upon the executor by this will, and those trusts are so connected with the entire property as to render an adjudication

upon them not only proper, but necessary. Wager v. Wager, reported in 89 N. Y. 161, was an action for a construction of a will like this by heirs and next of kin claiming to be entitled to a share of the residuum, which they alleged was undisposed of by the will of William Wager, deceased, and the court there say:

"So far as the property is effectually disposed of by the will, the executor holds it in trust for the legatees or beneficiaries. * * * If there is any part of such property, or any interest therein, not effectually disposed of by the will, he holds it in trust for those who are entitled to it under the statute of distribution."

—And cites Bowers v. Smith, 10 Paige, 193, and other cases, and proceeds:

"Any person claiming an interest in the personal estate of the testator, either as legatee under the will, or as entitled to it under the statute of distribution, may file a bill against the executors to settle the construction, and ascertain the validity, of the provisions of the will, so far as the complainant's interest is concerned, and to enable him to obtain from the executors such portions of the estate as he is either legally or equitably entitled to."

And again, at page 168, the court say:

"If the court had obtained jurisdiction for the purpose of establishing the equitable rights of the next of kin to the personal estate, that carries with it jurisdiction to adjust the whole controversy."

And citing also, at this point, 10 Paige, 200.

And the jurisdiction obtains whether the party asking the construction seeks to maintain the trust founded upon the will, and obtain a benefit from it, or to destroy the trust, and secure benefits thereby, as, in either event, the court is called to pass upon the validity and effect of the trust itself, whether that trust be an express or resulting one. See, also, Reed v. William, 125 N. Y. 560, 26 N. E. 730; Tiers v. Tiers, 95 N. Y. 568; Adams v. Becker, 47 Hun, 65; Van Camp v. Fowler (Sup.) 13 N. Y. Supp. 1.

A trust is plainly created, so far as the language goes, by the ninth clause of the will, which is as follows:

"I give and bequeath to the Society of the First Free Congregational Church of Lockport, N. Y., the sum of two thousand dollars, to be expended for such purpose as the board of trustees of said society shall think best; to be paid within three years after my decease. And I also give and bequeath to the said the Society of the First Free Congregational Church of Lockport, N. Y., the further sum of five hundred dollars, in trust to invest the same at interest, upon good security, and to apply the interest thereon each year to the purchase of clothing, or material to be made up into clothing by the ladies of the church without reward, for poor children, to enable them to attend the Sabbath school at such church. It is my direction that no part of such clothing shall be given to any child unless the necessities of the case are such that there shall be good reason to believe that the child would not otherwise attend the Sabbath school. The said sum of five hundred dollars is not to be loaned to the church, but is to be loaned to third parties, and kept a separate and distinct fund."

This church was what its name imports,—a Congregational church, —incorporated in 1838 under the act concerning religious corporations and societies, passed April 5, 1813. The plaintiffs attack the $500 bequest given to the church in trust as void for indefiniteness and uncertainty in the designation of the beneficiaries of the trust. It is apparent that it was not intended by the testator to give this

fund to the church for its own uses and purposes, as he lawfully might do, and as has been done in the bequest of the $2,000 in the preceding clause. He is careful to say, with respect to this $500, that it is "in trust," and "is not to be loaned to the church, or used by the church." And the question now is whether the plaintiffs' objection is well taken. The beneficiaries are certainly not pointed out specifically. It is left to the judgment of certain ladies of the congregation to select the objects of this bounty, and to clothe the children that, without such clothing, would not attend the Sabbath school; and the range of this discretion seems to be very wide, and any children that the ladies might think poor can be selected, no matter whether they are members of the church or congregation, or members of the Sabbath school, or connected therewith, or reside in Lockport or elsewhere. The counsel for the church cites, as sustaining the validity of this clause, Williams v. Williams, 8 N. Y. 525–530, and Power v. Cassidy, 79 N. Y. 602. The first of these cases was decided in 1853,—three judges dissenting,—and the facts were these: A testator gave to three trustees of the village of Huntington $6,000, in trust, as a perpetual fund, the interest of which was to be used for the education of the children of the poor, who should be educated at the academy in the village of Huntington. The bequest was there sustained upon the English doctrine of charitable uses that was in force in England prior to the Revolution, and therefore, the court say, was in force in this state, and that our Revised Statutes relative to uses and trusts do not apply to bequests for charitable uses; this doctrine of charitable uses, so far as it affects the question before us, being that devises and bequests for the support of religion or charity, though defective for want of such a beneficiary as the rules of law require in other cases, would, "when not in violation of the mortmain act, be supported and established in the court of chancery." A long struggle in our court of appeals followed, upon this question, and in the case of Levy v. Levy, 33 N. Y. 97, the doctrine of the 8 N. Y. was vigorously assailed; and in Prichard v. Thompson, 95 N. Y. 76; Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305; Cottman v. Grace, 112 N. Y. 307, 19 N. E. 839; and Fosdick v. Town of Hempstead, 125 N. Y. 581, 26 N. E. 801; and in other cases,—the doctrine stated in Williams v. Williams was utterly overthrown, and is no longer the law of this state, and was not at the time of the death of Edward J. Simmons. The position taken by the court of appeals in this regard now is that in the absence of a defined beneficiary, either named or capable of being ascertained, within the rules of law applicable to such cases, or where the gift is so indefinite as to be incapable of being executed by judicial decree, it is invalid. The object of this bequest was praiseworthy, and was creditable to the testator; but it cannot be sustained under the law of this state, and the decisions of its highest court, and is invalid. Nor does chapter 701 of the Laws of 1893, passed May 13th, enacting that no bequest or devise to religious, benevolent or charitable uses which are in other respects valid by the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder if in the instrument creating the bequest or

devise there is a trustee named to execute the same, etc., relieve the situation, or give life to the void bequest, as it was passed after the death of Simmons, and after the rights of the persons to this controversy had become vested. The act 'itself does not assume to have a retroactive effect, and, if it did, it would not be permitted to have that effect as against vested rights. This much is conceded in Dammert v. Osborne, 140 N. Y. 43, 35 N. E. 407; and the learned judge pronouncing the opinion in that case, in speaking of the statute, says that it seems to indicate on the part of the legislature an intent to enforce and uphold charitable bequests not heretofore recognized as valid, "and it may be regarded as the first step in the direction of modifying the body of law which this court has built up on the ruins of the system outlined in Williams v. Williams," supra. In Power v. Cassidy, 79 N. Y. 602, the property was given to the executors to be divided by them among such Roman Catholic charities, institutions, schools, or churches in the city of New York as a majority of the executors should designate. The court there held that as it appeared that there were incorporated institutions, of the kind described in the will, in the city of New York, capable of taking, the beneficiary was defined in the will itself, or capable of being ascertained, and therefore the bequest was valid. Subsequent cases, in passing upon this case, say that such is the effect of the case, but it should not be extended any further than the facts 'in that case would warrant. I do not see, therefore, that this case assists the defendant.

The defendant the American Congregational Union (its name having been changed so that it is now the Congregational Church Building Society), it is conceded by the pleadings and established by the proof, was incorporated under the act "For the incorporation of benevolent and charitable, and scientific and missionary societies, being chapter 319 of the Laws of 1848." By the 6th section of that act, corporations formed thereunder could not take a valid devise or bequest made 'in any will which should not have been made and executed at least two months before the death of the testator. Consequently, the bequest to this corporation is void, and the property it would take goes to the next of kin.

The defendant the American Home Missionary Society, now known as the Congregational Home Missionary Society, was incorporated under and by virtue of an act of the legislature of this state, being chapter 21 of the Laws of 1871; and by the second section thereof it was provided that the corporation should be capable "of taking, holding by purchase, gift, grant, devise or bequest, subject to the provisions of law relating to devises and bequests by last will and testament, real and personal property, of granting or otherwise disposing of the same for said purpose." The declared object of this corporation was "for the purpose of assisting feeble congregations, and of sending the gospel, and the means of Christian education, to the destitute within the United States." The right, therefore, to take by devise or bequest, was made subject to the provisions of section 6 of the act of 1848, above referrred to, and the bequest, not having been made within two months of the testator's death, is invalid for that reason.

The defendant the American Missionary Association was incorporated, under chapter 358 of the Laws of 1862, for the purpose of "conducting missionary and educational operations, and diffusing a knowledge of the Holy Scriptures in the United States and in other countries." By the fifth section of this act, devises and bequests not made to the corporation at least two months before the death of the testator were not valid. But by chapter 52 of the Laws of 1886 this section 5 was repealed, so that the two-months limitation does not apply to this corporation; and therefore the bequest to it in the thirteenth clause is valid, so that it will take one-third of the whole of the residuary fund. It is claimed by the counsel for this corporation that, if the other corporations cannot take, the whole fund disposed of by the thirteenth clause should go to the American Missionary Association, as the testator evidently intended to devote this residue to charitable uses; that the effect of the provision was to make a class of the three societies; and that it is well settled that, upon a failure of one or more of a class to take, the residue goes to the one entitled to take or the survivor. I find no warrant for this contention in the will. On the contrary, by the thirteenth clause, the residue is bequeathed to these societies by name, "to be equally divided between them, share and share alike; to be used by said three societies, and applied to the charitable uses and purposes of said societies, respectively."

Some question has been made, upon the argument, about the power of the court to determine in this action the status and rights of the various parties to the action, as to the property in dispute; the claim being that this is an action for the construction of the will, and not to determine who are entitled to take under it that part of the property, at least, which is to go to the heirs of law or next of kin. There is much force in this position, but, as before said, the plaintiffs have asked that the court determine in this action the status of the plaintiffs and of Lillie Simmons in relation to this property; and Lillie, in her answer, also asks the determination of her status; and the trial proceeded by the seeming acquiescence of all parties that this should be done, and proof was given on the subject. I will therefore consider it.

The findings will show, substantially, that the plaintiffs represent the interests of the blood relatives—so to speak—of the deceased. The important question now to determine is as to whether Lillie Simmons was the adopted child of the deceased, and the effect of such adoption.

By chapter 244 of the Laws of 1849 a society was incorporated by the name of the American Female Guardian Society, and it was declared by the second section that the object and business of the society should be, "by the publishing and diffusion of books, papers and tracts, and by other moral and religious means, to prevent vice and moral degradation, and to establish and maintain houses of industry and homes for the relief of friendless, destitute or unprotected females, and for friendless or unprotected children,"—its business to be conducted by a board of managers.—By the fourth section the corporation had the right to hold prop-

erty for the uses of the society, and receive by gift or devise, in the same manner, and subject to the same restriction, as religious corporations, and to possess the rights of corporations according to the provisions of title 3, c. 18, pt. 1, of the Revised Statutes, so far as applicable; and by the sixth section it was provided that, "in all cases where a child shall have been surrendered by its natural or other legal guardians to the care and management of the society," etc., "it shall be lawful for the board of managers, at their discretion, to place such child by adoption or at service in some suitable employment, and with some proper person or persons, conformably to the laws of this state in regard to the binding out of indigent children, provided that in all such cases the terms of the indenture shall be approved by the commissioners of the alms house or of the surrogate of the city and county of New York, which approval shall be signified on such indenture by the signature of such commissioners or surrogate, but in every such case the requisite provision shall be inserted in the indenture or contract of binding to secure the child so bound such treatment, education or instruction as shall be suitable and useful to its situation and circumstances in life." It is difficult to conceive a more praiseworthy object than the purpose for which this corporation was created,—to rescue the little waifs of society, mainly females, who had been abandoned by their natural guardians, and thrown upon the world without protection or a home, from "vice and moral degradation." This statute, in view of its high and beneficial purposes, should receive a liberal construction, in order to fully carry out those purposes; and it appears from this sixth section that one of two courses was open to these societies, with reference to these children,—either have them adopted, or bind them out to service. If they were to be bound to service simply, the form of binding, and the nature of the contract of service that should be entered into between the society and the person receiving the child, should be "conformably to the laws of this state in regard to binding out of indigent children." If it was adoption, simply, the statute leaves the inference that it should be by some suitable instrument providing for the adoption of the child, as a child, into the family of the person adopting, or the society could, by the same instrument, provide for both adoption and apprenticeship, and thus secure to the child the benefits of both; so that when the terms of apprenticeship ended, at the age of 18 years, the relation of parent and child created by the adoption would still exist with all its benefits and consequences. Any other construction of this statute would be too narrow. If adoption was not to have the effect here stated, the provisions as to adoption which would be inserted in connection with the contract of apprenticeship would be meaningless, which is not to be assumed, as it is the purpose of the law to give effect to all the terms of a contract, when they can be reconciled with reason, with each other, and with the purposes of the contract itself. With these observations, I will now consider the character and effect of an instrument of adoption and apprentice-

ship which was entered into on the 13th day of December, 1861, "between the Female Guardian Society, of the first part, and Edward Simmons, of Lockport, Niagara county, and state of New York, of the second part" (the said society being still incorporated, and in the exercise of its statutory powers). The first word in the instrument, and at the top of the first paragraph, and as a caption, is "Adoption"; and after the date of the instrument, and parties, it states:

"Whereas, Mary Jackson Wilson, a female child, who was of the age of two years the first day of December last, has been duly surrendered by its natural or other legal guardian to the care and management of the said society; and whereas, the said Edward Simmons has applied to the manager of the said society to put out and place the said child with him by adoption, and as an apprentice, until such child shall arrive at the age of 18 years: Now, this indenture witnesseth, that the parties of the first part, acting by their board of managers, and in pursuance and by authority of an act of the legislature of the state of New York entitled 'An act to incorporate the American Female Guardian Society,' passed the sixth day of April, 1849, and with the approbation of the surrogate of the city and county of New York, have placed, bound out, and by these presents do put, place, and bind out, the said Mary Jackson Wilson, as an apprentice, unto the party of the second part, to dwell with and serve him from the day of the date of these presents until the said apprentice shall attain the full age of eighteen years."

Then followed the usual provisions as to the apprentice's duty, and that of the master, as required by law, as to the binding out of indigent children, and it also contained this significant provision:

"Although the present instrument binds the above-named child strictly as an apprentice, it is nevertheless the true intention of the parties of the first part to place, and the party of the second part to receive, said apprentice as an adopted child, to reside in the family of the party of the second part, to be maintained, clothed, educated, and treated, as far as practicable, and with like care and kindness, as if she were in fact the child of the party of the second part."

So the real purpose of the instrument was to adopt the child. Thus the child was lifted from the apprentice at service to the dignity of a member of the family, and, while her servitude continued, she was to have the care, solicitude, and protection of a child in the family, and after the servitude ended, at the age of 18, she was still a child by adoption, and entitled to all the privileges of a child; and therefore the relationship between the parties did not end, as contended by the learned counsel for the plaintiffs, when she reached the age of 18. This instrument of adoption and apprenticeship was executed in duplicate by the parties thereto, and approved by the surrogate of the city and county of New York. The child was taken to the home of the testator, and immediately took the name which she now bears, of Lillie Simmons, and the relation, as a matter of fact, of parent and child, existed ever after between the deceased and Lillie. The word "adoption" or "adopt," as used in this instrument, is a broad term, and of great significance. Webster's Dictionary, as well as the Imperial Dictionary, defines adoption to be "the act of adopting, or the state of being adopted; the taking and treating of a stranger as one's own child." The Encyclopedia

Britannica defines it to be "the act by which the relations of fraternity and affiliation are recognized as legally existing between persons not so related by nature." And Worcester defines the word "adopt" "to receive and treat as a son or daughter one who is the child of another; to affiliate; to take, select, and assume as one's own." And adoption was practiced from the remotest antiquity, and was established to console those who had no children of their own. Bouv. Law Dict. Prior to the enactment of chapter 830 of the Laws of 1873, as amended by chapter 703 of the Laws of 1887, adopted children could not inherit or take as next of kin from the persons adopting them, in this state. In Rome, where the civil law prevailed, and to some extent in the Grecian states, the right to inherit was given to children who had been adopted. But in order to protect the heirs and next of kin of the person adopting, whose interests were to be affected by the adoption, and in all countries and states where the right of inheritance has been conceded to adopted children, some form of adoption, of a public character, under sanction of law, or by consent of the authorities, has been required. As far as I have been able to ascertain, the right to inherit has never been given to any child or person whose adoption was simply by parol. The right of inheritance was not given to adopted children by the English law. The instincts of feudalism and the theory of primogeniture rejected it. Nor was it permitted in the earliest histories of the states of our Union. But now, in many states, including our own, special provisions have been made by law for adoption, and for the right of inheritance in the person adopted; and this policy is now deemed a wise one in most enlightened countries and states, as it completes and solidifies that relation created by the adoption of a stranger to the blood into the family. It is the misfortune of many married persons to be childless, and the custom is quite general for such persons to adopt children. Happy results often flow from such adoption, and it should be the policy of the law to make that relation, when once assumed, as strong as possible.

It is well known that at the time of the passage of the act of 1873 there had been many adoptions of children in this state under various statutes, such as the one under which Lillie was adopted, and by various charitable, religious corporations, or orphan asylums, or other persons having charge of children needing homes and protection. These adoptions had been through instruments executed between the parties disposing of and persons adopting the children, and the indorsement or consent of some public official, like a surrogate, supreme court judge, county judge, or commissioner, had been required. These acts were revised and consolidated by chapter 438, Laws 1884; and see section 7 thereof. Sometimes these instruments assuming to create adoption had been defective, and had not conformed absolutely to the provisions of the law under which they were executed. But the parties interested had relied and acted upon them, and it was important that they should be sustained; and the legislature at

length concluded to legalize them, and to prescribe a uniform method of adoption for the future, and proceeded to do so by this act of 1873, and marked out a course of procedure to govern such future adoptions. And it was provided in the tenth section of the act of 1873 that a person, when adopted, should take the name of the person adopting, and the two should thenceforth sustain towards each other the legal relation of parent and child, and have all the rights, and be subject to all the duties, of that relation, excepting the right of inheritance. But by chapter 703 of the laws of 1887, which amended the tenth section by expunging the words "excepting the right of inheritance," and inserting after the word "relation," in the fourth line of the section, these words:

"Including the right of inheritance, and the heirs and next of kin of the child so adopted shall be the same as if the child was a legitimate child of the person so adopting."

The concluding section of the act of 1873, § 13, provided that:

"Nothing herein contained shall prevent proof of the adoption of any child heretofore made according to any method practiced in this state from being received in evidence, nor such adoption from having the effect of an adoption hereunder, but no child shall hereafter be adopted except under the provisions of this act, nor shall any child that has been adopted be deprived of the rights of adoption except upon a proceeding for that purpose with the like sanction and consent as is required for an act of adoption under the eighth section hereof, and any agreement and consent in respect to such adoption or abrogation thereof hereafter to be made shall be in writing, signed by such county judge or a judge of the supreme court, and the same or a duplicate thereof shall be filed with the clerk of the county and recorded. * * * But nothing in this act contained in regard to such adopted child inheriting from the person adopting shall apply to any devise or trust now made or already created, nor shall this act in any manner change, alter or interfere with such will, devise, or said trust or trusts, and as to any such will, devise or trust, said adopted child shall not be deemed an heir so as to alter estates or trusts or devises in wills already made or trusts already created."

This statement is too plain for cavil or comment. It, so to speak, adopted all former adoptions, pursuant to any method practiced in this state. It brought these adoptions under and within the purview of this statute. It gave all the persons who had thus been adopted, after the amendment of 1887, the right to inherit and take, as next of kin, the property of the intestate who had adopted them; and the section was careful to say that persons adopted theretofore should not be deprived of their adoption except by a proceeding for that purpose, with the like sanction and consent that were made necessary for adoption under that act itself. And it is entirely clear that in providing a method for adoption, the recording of the adoption papers, etc., and in obtaining the consent necessary for a valid adoption, provided in that act, it only related to future adoptions. It is true that the act of 1887 uses the word "inheritance," as applied to adopted children, which, in its strict meaning, refers only to real estate; but the legislature evidently used this word in its broad sense, and as commonly accepted,—as a right to both real and personal property of which the parent died seised or owning. This

is evident from the words following the word "inheritance,"—"and
the heirs and next of kin of the child so adopted shall be the same as
if the said child was a legitimate child of the person so adopting."
It could not have been the intention of the legislature to clothe the
children of the adopted child with any right additional, as to the
property of the person adopting, than the person adopted himself en-
joyed.

The learned counsel for the plaintiff cites, as in conflict with
the views here expressed, the case of Hill v. Nye, 17 Hun, 457.
That case arose after the passage of the act of 1873, and was
decided in 1879, and was consequently before the passage of the
amendment of 1887, conferring the right of inheritance. In that
case one Cheeny Hill and his wife had an infant child. Cheeny
went to state's prison for a long term of years, and his wife
gave the child (a boy) to one Kelsey. There was no adoption
under any statute, or under any form of writing, but it was simply
a parol gift of the child. The boy took the name of Kelsey,
lived in his family as his child, married, and had a son. That
son had some personal property, and died at the age of 17, his
father and mother having died before him. The property had
to be distributed, therefore, under the statute of distributions.
The question was whether the paternal grandfather (Hill) was
entitled to share in the distribution, or whether he was excluded by
the adoption of his son by the said Kelsey. The court, at general term,
rightly held that Hill was entitled to share in the distribution
with the relatives of the deceased on his mother's side, and this
parol adoption did not bar Hill from taking. No one would rea-
sonably contend that such an adoption would deprive Hill of
the property, and the court could have decided it in no other
way, and that was all there was before it. The observations
of the learned judge as to the effect of the thirteenth section
of the act above quoted, with all due respect, were therefore
not necessary to the determination of the case; and the trial
court is not required to follow them in this instance, and under
the circumstances of this case, so widely different from that,
and after the amendment of the statute conferring inheritable
qualities upon adopted children. The judge, at page 461 (Hill
v. Nye, supra), quotes that portion of the thirteenth section which
is as follows: "Nothing herein contained shall prevent proof
of the adoption of any child heretofore made according to any
method practiced in this state from being received in evidence,
nor such adoption from having the effect of an adoption here-
under;" and, after saying that the only effect of the provision as
to evidence of former adoption was that it did not take away
the privilege of proving such adoption as theretofore existed, he
says:

"The second provision quoted simply declares, in effect, that, where such
antecedent adoption may have been proved, or be found to exist, it may have
full force and effect given to it, notwithstanding it took place prior to the
passage of the statute; that nothing contained in the statute shall prevent
such antecedent adoption from having the effect of an adoption hereunder,—

that is, this statute shall not prevent any such effect being given to it. But this stops far short of declaring that such antecedent adoption, when proved, shall have the like effect as an adoption consummated in the mode prescribed by the statute."

Again the judge says:

"We have been unable to find any provision in the act of 1873 which indicates an intent to interfere with the statutes of distribution in respect to cases of adoption, like the one before us. When a case shall arise under the statute of 1873, it will present numerous interesting questions, as the statute is somewhat indefinite and obscure. * * * The words 'excepting the right of inheritance' are apt and appropriate words to be used with an intent to except from the new departure such inheritance of real estate as would pass under the laws regulating descent."

The judge therefore seems to concede that the case before him did not arise under the statute of 1873, and consequently any attempt to construe it was unnecessary, and therefore obiter, but he lays stress on the fact that the right of inheritance was excepted. Is it not fair to assume that had the case before us, with the statute as amended, been before the judge at that time, he would have reached very different conclusions? The title of the act of 1873 is important in aid of its construction; especially so when, as the learned judge says, "the statute is somewhat indefinite and obscure." In such cases, resort may always be had to the title of the act, in order to ascertain its purpose and object, and that title is "An act to legalize the adoption of minor children by adult persons." This is in harmony with the thirteenth section, and the general policy of the law. If the former adoptions were not to be placed upon the same footings with the adoptions that should thereafter occur pursuant to the act of 1873, what was there to legalize? Why was it provided that those adoptions should not be disturbed, except by a special proceeding for that purpose? The judge says, in effect, that, though the clause stated that any child theretofore adopted should not be deprived of the effect of an adoption hereunder (the statute of 1873), yet it should not have the like effect of an adoption hereunder. Then it is to have some effect,—just what, we are not told,—and it is a question that must be determined in this action. It is true that section 13 is awkwardly drawn, and is possibly open to the criticism or distinction, upon a bare consideration of its words, which the learned judge makes. But we must take the whole statute together—its objects, the remedies sought by it, and the condition of things upon which it operated—in construing it; and, in my mind, no doubt remains that the intention of the legislature was to legalize these former adoptions, and place them on a level with the adoptions that should thereafter occur, and not subject the parties to a new adoption under that statute, in order to confer upon them the rights which it granted; and, when the right to take as heirs and next of kin was conferred by the amendment of 1887, it covered all cases of adoption, alike, that had been recognized by the act of 1873. It needs no argument to show that if the adopted child was clothed by statute with the right to inherit, and to take as next of kin, he takes, under the statutes of descent and distribution, the same as a legitimate child of the

intestate. The result which comes from the conclusions above reached is that Lillie Simmons was the legally adopted child of the deceased, and takes the undevised and unbequeathed property of Edward J. Simmons, to the exclusion of the plaintiffs and his sole heir at law and next of kin. There are no vested rights to interfere with her taking this property, as her adoption was legalized, and she was entitled to inherit, long before the death of Simmons, and therefore before any rights to his property had vested in his relatives.

The complaint asks an adjudication as to the right of Lillie to devise or bequeath by will the sum of $7,000, or the securities in which the same may be invested, mentioned in the fourth provision of the will, in case she should not marry, or have a child born to her. It was conceded upon the argument that she would have this power, by all parties, and I have therefore not considered it; and the conclusions above reached render it unnecessary to do so. No relief can be given the plaintiffs in this action, as they take nothing by it, but the questions are important, and proper to be brought before the court for adjudication, and the plaintiffs were justified in doing so. They should therefore recover costs, to be paid out of the fund, the property of the deceased. The defendant the American Missionary Association should also recover costs. The defendant the Society of the First Free Congregational Church of Lockport should have costs, as its defense was made in good faith, and for a meritorious object. The defendant the executor Burrows should recover costs, and also the defendant Lillie M. Simmons. All costs to be paid out of the funds of the property of the deceased.