(6 App. Div. 106)

## CARROLL v. COLLINS.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

ADOPTION—INHERITANCE BY ADOPTED CHILD.

Laws 1873, c. 830, which was the first general statute providing for the adoption of children, providing (section 13) that "nothing herein contained shall prevent proof of the adoption of any child heretofore made according to any method practiced in this state from being received in evidence, nor such adoption from having the effect of an adoption hereunder," does not validate any adoptions except those made under the previous special statutes; and therefore Laws 1887, c. 703, amending the act of 1873 so as to confer on adopted children the right of inheritance, which was not given by the act of 1873, does not give the right of inheritance to children adopted before that time, unless the adoption was pursuant to some statute.

Appeal from circuit court, Westchester county.

Action by Mary E. Carroll against Thomas Collins to recover possession of lands, claimed by plaintiff, of which one Elizabeth Collins died seised in April, 1893. Judgment was rendered in favor of plaintiff, after trial by the court without a jury, and defendant appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

J. W. Bartram (Seward Baker, of counsel), for appellant.

Hobbs & Gifford (Jesse Stearns, of counsel), for respondent.

BARTLETT, J. The plaintiff sued as the adopted child and heir of Elizabeth Carroll, deceased, to recover possession of certain real estate in Westchester county of which Elizabeth Carroll died seised, and which her surviving husband, the defendant, Thomas Collins, now claims to own. The complaint alleged that the plaintiff was lawfully adopted by John Carroll and Elizabeth, his wife, in the year 1850, at Van Courtlandt Park in the city of New York; that the said John Carroll died in the year 1886; that thereafter the said

Elizabeth Carroll married the defendant Thomas Collins; and that subsequently, and in the year 1893, the said Elizabeth Collins, formerly Carroll, died intestate, seised of the real estate described in the complaint, and leaving the plaintiff as her sole heir and next of kin. The answer denied the alleged adoption, and the intestacy of the said Elizabeth Carroll, afterwards Collins, and alleged that she left a will devising all her property to the defendant. Upon the trial it appeared that such a will had been made, but that the surrogate's court of Westchester county had duly adjudged that it was revoked by reason of the marriage of the testatrix after its execution.

The plaintiff was the daughter of John Tracy and Ann Tracy. In 1850, when she was about 6 years old, her mother, who had become a widow, executed an instrument in writing, and delivered it to Elizabeth Carroll and John Carroll, her first husband. That instrument is lost. The plaintiff, however, swears to having seen it in the possession of Mrs. Carroll some 10 years after its execution. She says it was dated December 16, 1850, and was signed by Ann Tracy, John Carroll, and Elizabeth Carroll, and witnessed by Augustus Heustis, Esq., a justice of the peace. Her further knowledge of its contents appears to have been derived wholly from the statements of Mr. and Mrs. Carroll concerning the paper. When she inquired in regard to its character, she says Mrs. Carroll responded:

"That is the paper we got from your mother that you are our own child. You can never leave us. You are our own child, and you take our name."

And again the plaintiff testifies:

"She said my mother gave her, by that paper, full charge of me to be her child; that she never could take me away from her, and to take her name and inherit her property. That was when I was 16 years old, and I heard her speak of it often after that. I frequently heard her mention that paper. * * * I told all she said to me. By that paper my mother gave me up to her as her own child, and I was to take her name. She very often repeated it to me, till I was 20 years old, and to when I was 30 years old."

The plaintiff took the name of Mary Carroll, and has kept it ever since 1850. From that time she seems always to have been treated by Mr. and Mrs. Carroll as their child. She lived with them continuously until she was 20 years old. Then she went out to work, and turned over to them her savings,—whatever wages she had left over and above her board and expenses,—and continued this practice for a long time, until she was about 45 years old. Mr. Carroll then died, and Mrs. Carroll subsequently married the defendant.

Upon this evidence the trial court found that in the year 1850 the plaintiff, then about 6 years of age, was adopted and made the lawful heir of John Carroll and Elizabeth Carroll, by an instrument in writing sufficient for that purpose, executed by and between the said John Carroll and Elizabeth Carroll on the one hand, and Ann Tracy, the natural mother of the plaintiff, on the other; the plaintiff's natural father having died before that time. The plaintiff was therefore declared to be the sole heir of the said Elizabeth Carroll, and entitled to recover the property mentioned in the complaint, and judgment was directed in her favor accordingly.

Assuming that precisely such an instrument as that described by the plaintiff was executed and delivered in the year 1850, the question arises whether the law then sanctioned any such adoption, and, if not, whether it has even been legalized by subsequent legislation. We think both questions must be answered in the negative. The adoption of children was unknown to the common law of England, and exists in the states of the Union solely by virtue of statute. Morrison v. Sessions' Estate, 70 Mich. 297, 305, 38 N. W. 249; Ballard v. Ward, 89 Pa. St. 358; Abney v. De Loach, 84 Ala. 393, 4 South. 757. The first general statute on the subject enacted in this state was chapter 830 of the Laws of 1873, which was entitled "An act to legalize the adoption of minor children by adult persons." It defined adoption, as provided for therein, to be:

"The legal act whereby an adult person takes a minor into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect to such minor."

It prescribed who might adopt children, what consents were necessary, and when they might be dispensed with; and provided for the attendance of the parties before a county judge, and the execution of the required consents and the agreement of adoption. The last section (section 13) declared that:

"Nothing herein contained shall prevent proof of the adoption of any child heretofore made, according to any method practiced in this state, from being received in evidence, nor such adoption from having the effect of an adoption hereunder."

This act of 1873 was amended by chapter 703 of the Laws of 1887 in one respect. The tenth section, as it originally stood, provided that a child, when adopted, should take the name of the person adopting, and the two thenceforth should sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance, and except as to the limitation over of real and personal property under deeds, wills, devises, and trusts. The amendment of 1887 changed the phrase "excepting the right of inheritance" so as to make it read "including the right of inheritance." Both the act of 1873 and the act of 1887 have been repealed by the new statute in regard to the adoption of children, which was passed by the last legislature as a part of the revision of the general laws of this state, and goes into effect on October 1, 1896. Laws 1896, c. 272.

Prior to any of this general legislation, however, various special statutes had authorized particular charitable institutions in this state to place children committed to their care with persons who consented to take them by adoption, and in such cases a formal instrument was executed, to express and carry out the intent of the parties. An example of such an enactment may be found in chapter 244 of the Laws of 1849 in reference to the American Female Guardian Society, which was considered in a careful and able opinion by Judge Hamilton Ward, of the Eighth district, in the case of Simmons v. Burrell, 8 Misc. Rep. 388, 28 N. Y. Supp. 625. Except under particular statutes of this character, there appears to have been

no such thing as an adoption which gave a child any right of inheritance known to the law of this state prior to the act of 1873.

The contention of the respondent, however, is that the saving clause above quoted, in section 13 of the act of 1873, so affects all adoptions previously made in any way which had been practiced in this state, whether under the sanction of special statutes or not, as to make all such adoptions equivalent, in effect, to adoptions under the act of 1873 itself. While the clause clearly recognizes the existence of prior adoptions of some kind, it seems to us that it applies only to cases of adoption in some form or manner previously practiced under the sanction of law, although different from the mode prescribed by the act of 1873. We think the statutory phrase, "the adoption of any child heretofore made according to any method practiced in this state," was at most intended to relate only to prior adoptions which were authorized by some law at the time they were made, such, for example, as the special statute of 1849 in reference to adoptions by the American Female Guardian Society. Independently of such enactments, an infant gained no legal rights, as heir or next of kin, by being received into a family and treated as a child of the family. To hold that the proof of such reception and treatment was evidence of an adoption which the act of 1873 was intended to legalize would be to introduce a dangerous element of uncertainty into many titles in this state. Ample effect is given to the provision under consideration by limiting it to prior legal adoptions, and, as was said by Mr. Justice Cullen, at special term, in the case of Morrisson v. Morrisson (unreported), no real hardship is occasioned by adopting this rule, "for it is always in the power of one by his will to take care of any person whom he believes to have a claim on his bounty."

We have found only three cases in which the effect of section 13 of the act of 1873 has been considered. Hill v. Nye, 17 Hun, 457, was decided by the general term of the Fourth department prior to the amendment of 1887. There it was held that the act of 1873, legalizing adoptions, applied only to such as took place after its passage. As to the saving clause in section 13, Hardin, J., said that it did not give fresh force and vigor to any adoption that took place prior to the passage of the act. "The statute in effect declares that the antecedent adoptions shall not be subtracted from. In so declaring it does not add to the effect which they had antecedent to the enactment of its provisions." In Simmons v. Burrell, supra, Ward, J., took a somewhat different view, holding that prior adoptions were legalized by the saving clause, and rendered practically the same, in legal effect, as adoptions under the act of 1873 as amended in 1887; but the case before him was that of a child formally adopted in 1861, under the special act, already mentioned, incorporating the American Female Guardian Society, and his decision does not deal with the subject of nonstatutory adoption at all. The third case to which we refer is Morrisson v. Morrisson, decided at special term in Suffolk county, but not reported, where Mr. Justice Cullen held that the operation of the saving clause of the act of

1873 was restricted to prior adoptions under the charters of charitable societies.

The learned judge before whom the present case was tried seems to have regarded the title of the act of 1873, "to legalize" adoptions, as significant of an intent to deal with the past, as well as the future; but, conceding this, it by no means indicates any intention to legalize all previous adoptions, however informal. What the saving clause did guard against, however, was any possible effect which the statute might otherwise have had to render nugatory previous formal adoptions under special laws.

There are some serious questions in this record in regard to the admissibility of evidence, but our conclusion upon the main question renders it unnecessary to discuss them. The plaintiff took proceedings for the probate of heirship, under Code Civ. Proc. §§ 2654–2659, to establish her right of inheritance, as an adopted child, to the property described in the complaint; and it is insisted that the record of the proceedings constitutes presumptive evidence in her behalf in this action which must prevail, inasmuch as no proof was introduced to rebut it. It is clear, however, that no such effect can be given to the decree of the surrogate in this matter, in view of the explicit proof on the part of the plaintiff herself as to the specific facts constituting the alleged adoption. That proof showed, as matter of law, if we are right in our main conclusion, that she had not been so adopted as to become entitled to inherit.

The complaint was amended, at the end of the trial, so as to set out not only an adoption of the plaintiff by Elizabeth Carroll, but an agreement to adopt, by virtue of which the plaintiff became the owner of the land in controversy; and it is argued that the plaintiff is entitled to prevail under this amendment, if not upon the theory of an actual adoption. But the amendment was one which should not have been granted on the trial, against the exception of the defendant, inasmuch as it changed the cause of action, or added a new cause of action, and, furthermore, there is no finding by the trial court on the subject of the alleged agreement, as distinguished from the alleged actual adoption.

The judgment must be reversed, and a new trial granted, costs to abide the event. All concur.