In the Matter of the Application for Letters of Administration upon the Estate of OSCAR P. KIRBY, Deceased.

Surrogate's Court, Orange County, December 8, 1932.

*Schriver & Eager* [*Samuel W. Eager* of counsel], for the petitioner.

*John F. Halstead,* for the estate.

TAYLOR, S. Lulu Burke Kirby claims to be an adopted daughter of Oscar P. Kirby, the above-named decedent, and in support of that contention presented an agreement or indenture entered into between the Female Guardian Society and Oscar Kirby and wife, dated April 8, 1886. It appears from the testimony that one copy of this agreement or indenture was signed by Mr. and Mrs. Kirby and delivered to the American Female Guardian Society, and the other copy, signed by the officers of the society, delivered to the other parties to the agreement

At the very outset the contention is made that because of this interchange of papers, neither one of which is signed by all parties to it, there is no legal agreement or indenture. This contention is unsound, for " an agreement may be collected from several different writings which, when connected, show the parties, subject-matter, terms and consideration. (13 C. J. Contracts, 304.)

The authorities are unanimous to the effect that adoption was

unknown to the old common law of England. It was known to the Roman law, was attended by ceremonial dignity, and was of deep meaning and far-reaching results. It was known to the Athenians and Spartans and was familiar to the writers of the New, if not the Old, Testament. It seems to have taken root in Egypt (Exodus II: 10). The doctrine was not unknown to the Babylonians — witness the Code of Hammurabi, compiled from 2285 to 2242 B. C. (*Hockaday* v. *Lynn*, 200 Mo. 456 (see interesting historical discussion of subject in this case); *Matter of Thorne*, 155 N. Y. 140; *Carroll* v. *Collins*, 6 App. Div. 106; *U. S. Trust Company* v. *Hoyt*, 150 id. 621; *Matter of Livingston*, 151 id. 1; *Matter of Ziegler*, 82 Misc. 346; affd., 161 App. Div. 589; *Matter of Landers*, 100 Misc. 635; *Erlanger* v. *Erlanger*, 102 id. 236; affd., 185 App. Div. 888; *Matter of Hayford,* 109 Misc. 479; *Barrett* v. *Miner*, 119 id. 230; *Matter of Souers*, 135 id. 521; *Matter of Davis*, 142 id. 681; *Matter of Costigliola*, 132 id. 419.)

While the establishment of relationships unknown to the common law and solely the creature of statute must be strictly construed and all statutory prerequisites in every respect complied with, nothing being assumed, presumed or inferred, and the burden of proof being upon the person claiming by virtue of such relation to in all respects prove full compliance with the statutes (*People ex rel. Stewart* v. *Paschal*, 68 Hun, 344; *Matter of Monroe*, 132 Misc. 279, 281; *Murphy* v. *Brooks*, 120 id. 704; *Matter of Johnson*, 98 Cal. 531), I am assuming, there having been no evidence presented upon the subject, that the claimant was " duly surrendered by the natural or other legal guardians, or by operation of law, to the care and management " of the American Female Guardian Society. The agreement or indenture so states and the statute creating the society provides that " in all cases where a child shall have been surrendered by its natural or other legal guardians to the care and management of the society by any instrument or declaration in writing, it shall be lawful for the said board of managers at their discretion to place such child by adoption, or at service in some suitable employment and with some proper person or persons * * *." (Laws of 1849, chap. 244, § 6.)

It is interesting to note in passing that the first general statute regulating the adoption of children was chapter 830 of the Laws of 1873. By that statute the adopted child was not given the right of inheritance, but in 1887 (Laws of 1887, chap. 703) " the right of inheritance " was conferred upon the adopted child.

The agreement or indenture offered in evidence bears date the 17th day of February, 1886. I am satisfied that the statute creating the American Female Guardian Society in 1849 and prescribing

its powers was not modified or impliedly repealed by the Laws of 1873, for in the enactment of the Laws of 1881, chapter 285, the 1849 statute was amended to dispense with the requirement that the agreement or indenture should be approved by the commissioners of the almshouse or by the surrogate of the county of New York. (See *Matter of Larson*, 31 Hun, 539; revd., 96 N. Y. 381.)

Although the statute under which the petitioner claims to have been adopted did not confer upon her the right of inheritance and the agreement or indenture under which she claims was executed prior to the 1887 statute, the authorities are unanimous that the law in effect at the time of the death of the person in whose estate property rights are claimed governs the descent and distribution. (*Dodin* v. *Dodin*, 16 App. Div. 42; affd., 162 N. Y. 635; *United States Trust Co.* v. *Hoyt*, 150 App. Div. 621; *Rosekrans* v. *Rosekrans*, 163 id. 730; affd., 220 N. Y. 628; *Simmons* v. *Burrell*, 8 Misc. 388; *Matter of Gallaudet*, 135 id. 163.)

The agreement or indenture provides that the society "have put, placed and adopted out, and by these presents do put, place and adopt out the said Lulu Burke as a child by adoption unto the said party of the second part, to dwell with, and become an adopted child of the said party of the second part, from the date of these presents, until the said child shall attain the full age of eighteen years, during all of which time the said child shall live with the said party and according to her power, wit and ability, shall honestly, orderly and obediently in all things demean and behave herself towards the party of the second part, as all children should demean and behave themselves toward their natural parents." The foster parents, as I shall call them, by the agreement or indenture covenated that they "will provide said Lulu Burke with all things necessary and fit for a child, and in all respects similar to what would ordinarily be provided and allowed by the said party, or one in their station of life for their own child or children," and, further, " to teach and instruct * * * said child, in all branches of education ordinarily taught to the children of persons in the station of life of said party of the second part, and shall also give unto said child at the expiration of said term of adoption, a complete new suit of clothes, together with those she shall then have in use, and the sum of $60 (sixty) dollars." The agreement or indenture required the foster parents to cause the " child to attend public worship at least once a week during said term * * * " and to " bring her up in the moral and correct manner, and generally that said child shall be maintained, clothed, educated and treated with like care and tenderness as if she were in fact the child of the party of the second part." The foster parents, "their legal repre-

sentatives or assigns," agree not to assign or transfer the instrument without the consent of the society and were required to report statedly in writing the well-doing of the child, and to permit representatives of the society to ascertain to their own satisfaction whether the foster parents were fully carrying out and performing all the conditions of the instrument.

The only reported case cited (*Simmons* v. *Burrell*, 8 Misc. 388) directly involving the effect of an adoption from the same society passed upon an agreement or indenture somewhat different in form from the one now under consideration. There the instrument was both of adoption and apprenticeship, for it contained this significant provision, " although the present instrument binds the above named child strictly as an apprentice, it is nevertheless the true intention of the parties of the first part to place, and of the party of the second part to receive, said apprentice *as an adopted child.*" The learned court held that " the real purpose of the instrument was to adopt the child," her apprenticeship to end at the age of eighteen years, and from that time on her status was to be that of an adopted child and entitled to all the privileges of a child thereafter. (See *Middleworth* v. *Ordway*, 49 Misc. 74; affd., 117 App. Div. 913; affd., 191 N. Y. 404.)

While perhaps the agreement or indenture under consideration is not strictly an indenture of apprenticeship in that the infant was not to learn the art or mystery of any trade or craft, and the nature of the services to be rendered was not particularly specified, except as one may infer that the child was to render all such services to the foster parents, so called, as a natural child would render, the agreement or indenture nevertheless contains practically all the statutory requirements of an indenture. (See Dom. Rel. Law, § 122, and Laws of 1896, chap. 272, § 71; see, also, Laws of 1884, chap. 438, § 5.) It is also significant that under this agreement the relationship between the parties ended when the infant, if a female, became eighteen years of age. (Laws of 1884, chap. 438, § 5.) If not an indenture of apprenticeship the agreement is something in the nature of a " limited adoption." It is contrary to the idea of complete adoption in its provision that the child should become an adopted child until she should attain the full age of eighteen years because if fully adopted that relationship would continue until death. Inconsistent also with complete adoption is the provision that upon the child attaining the age of eighteen years the foster parents should provide her with a new suit of clothes and the sum of sixty dollars.

The latter provision undoubtedly created an obligation for the benefit of the infant upon which she could successfully maintain

an action upon compliance by her with all the conditions in said agreement or indenture on her part to be performed (*Gates* v. *Gates*, 34 App. Div. 608; *Brantingham* v. *Huff*, 43 id. 414; revd. on other grounds, 174 N. Y. 53; *Doppman* v. *Muller*, 137 App. Div. 82; affd., 208 N. Y. 599; *Winne* v. *Winne*, 166 id. 263; *Doyle* v. *Fischer*, 33 A. L. R. 733; Anno. p. 740), and the creation of a right in a child to sue its parents for a stipulated sum and the value of personal property at a certain age is contrary to all ideas of adoption.   If this agreement or indenture constituted a full and complete adoption, then, too, a covenant against the assignment of the instrument would seem to be superfluous.

The instrument in question is so limited and contains so many requirements that it cannot be considered an outright and complete adoption.

The object and business of the American Female Guardian Society, as expressed in the statute creating it (Laws of 1849, chap. 244), is " by the publication and diffusion of books, papers and tracts, and by other moral and religious means, to prevent vice and moral degradation," and to establish and maintain houses of industry and homes for the relief of friendless, destitute or unprotected females and for friendless or unprotected children.   The placing of a child surrendered to it in a good home until the child should reach an age when he or she might reasonably be expected to make its own way in the world and at that time to be furnished " with a complete new suit of clothes " and sixty dollars, or some other adequate sum in money, would be fully carrying out the object for which the society was created.

The agreement or indenture in question falls short of an adoption with rights of inheritance.