(32 App. Div. 374.)

SMITH v. ALLEN et al.

.(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1. ADOPTED CHILD—RIGHTS AS HEIR.

The fact that a testator took a child from an orphan asylum, and brought her up in his family in all respects like an adopted child, and spoke of her in his will as "my adopted daughter," does not, in the absence of proof of any statutory adoption, entitle her to share in the residuary clause in. his will, bequeathing the property "to such persons as would be legally entitled to succeed and inherit the same in case of intestacy."

2. ADOPTION—WHAT CONSTITUTES.

Under Laws 1884, c. 438, § 7, authorizing certain charitable institutions to bind out children "by adoption, with some suitable person or persons, by a written statement of adoption," the act of the corporation from whose custody the child is taken does not constitute adoption, for that must be the act of the person who takes and receives the child.

3. WILLS—VESTED REMAINDER.

A testator devised and bequeathed his residuary estate "remaining after the death or remarriage of my wife to such person or persons as would be legally entitled to succeed to and inherit the same in case I died intestate,. and to their heirs, administrators, and assigns, forever." At the time of his death he had no children, but left surviving him five nephews and nieces, all of whom, except one, died during the life of the widow. *Held,* that the remainder vested absolutely at the testator's death, subject to the life interest of the widow.

Appeal from special term.

Action by Percival C. Smith, as substituted trustee under the last will and testament of William H. Allen, deceased, against Frank Allen, Sarah F. M. Greene, and others, to construe a will. Appeal by defendant Greene from a judgment adjudging that she was not the adopted daughter of testator, and appeal by defendant Allen from the same judgment, except so far as it affects the right of defendant Greene. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,. HATCH, and WOODWARD, JJ.

Edward P. Lyon, for appellant Allen.

George W. Carr, for appellant Greene.

Arnon L. Squiers, for plaintiff respondent.

Franklin B. Lord, for respondents Lord and Day, trustees, and: Taylor.

Louis M. Fulton, for respondents C. Edward Toucey and others.

Robert E. Bach, for respondent treasurer of Kings county.

GOODRICH, P. J. The action is brought for the purpose of obtaining the construction of the last will of William H. Allen, who died in February, 1875. The will was admitted to probate in April, 1890. The plaintiff is the substituted trustee in the place of the·

executors named in the will. It is not necessary to state all the allegations of the complaint, nor the issues framed by the answer, as only one question is actually presented by the appeal of the defendant Greene; and that is whether or not the defendant Greene was the adopted child of the testator, and entitled to a share in his estate under the eighth clause of the will. The question which arises under the appeal of Frank Allen relates to the persons entitled to share in the residuary estate. The will contains the following clauses:

"Third. I give and bequeath to my adopted daughter, Sarah Frances Mahan Allen, the sum of ten thousand dollars ($10,000); and I make this legacy a charge upon all my estate, both real and personal." "Eighth. All the rest, residue, and remainder of my real and personal estate, if any, remaining after the death or remarriage of my said wife, and after the payment of all the legacies mentioned in this, my will, I give, devise, and bequeath to such person or persons as would be legally entitled to succeed to and inherit the same in case I died intestate, and to their heirs, executors, administrators, and assigns, forever."

There was also a codicil, reading as follows:

"Whereas, since the execution of said will I have lent and advanced to the husband of my adopted daughter, Sarah Frances Mahan Allen, now wife of Charles H. Greene, upwards of ten thousand dollars, I do hereby revoke the bequest to my said adopted daughter of ten thousand dollars, which is contained in the third paragraph of my said will; and, in lieu thereof, I do hereby authorize and direct my executors and executrix named in my said will to cancel and discharge any indebtedness that may exist at my death by the husband of my said adopted daughter, and to surrender and deliver up to him any notes or other obligations which I may have received from him."

The testator, though twice married, had no children. He left surviving him five nephews and nieces, all of whom, except Frank Allen, one of the defendants, died during the life of the widow. She died in August, 1896. The representatives of those who are dead are also defendants. The court, at special term, decided that the defendant Greene took nothing under the eighth clause of the will, and that each of the five nieces and nephews of the testator took a vested remainder in one-fifth of the residuary estate, under that clause of the will, and that they or their estates were entitled thereto. From the judgment entered thereon, appeals are taken by Mrs. Greene and by Frank Allen, the surviving nephew.

In October, 1856, the defendant Greene, then five years of age, and an orphan, was placed in the Orphan House of the Church Charity Foundation of Brooklyn, and was baptized under the name of Sarah Frances Mahan. In 1857 she was taken from the Foundation by the testator and his wife, and continued to live in the testator's family, and was educated and supported by him, until her marriage to Charles H. Greene, in October, 1872. It is unnecessary to state any of the evidence showing the affectionate and pleasant relations of the testator and his family with Fanny, except to say that it shows that she was treated in all things as an adopted child; and the testator, in his will and codicil, twice speaks of her as his "adopted daughter." Her counsel contends that she became in all respects—legally and otherwise—an adopted child, with the right of inheritance to the testator. If this contention be correct, she

became entitled to the entire residuary estate, under the eighth clause of the will, by which the testator devised and bequeathed the residuary estate "to such person or persons as would be legally entitled to succeed to and inherit the same in case I died intestate." But the difficulty with this contention is that Mrs. Greene never legally became the adopted child of the testator. It is not necessary to trace the history of the statute commonly known as the "Adoption Statute" (chapter 830, Laws 1873). It is sufficient to say that at the time of the testator's death, in 1890, it had been so amended by chapter 703 of the Laws of 1887 as to confer upon an adopted child the right of inheritance. Section 13 of the former act provides that "nothing herein contained shall prevent proof of the adoption of any children heretofore made according to any method practiced in this state from being received in evidence, nor such adoption from having the effect of an adoption hereunder." In Carroll v. Collins, 6 App. Div. 106, 109, 40 N. Y. Supp. 54, this court (Mr. Justice Bartlett writing) held that "the adoption of children was unknown to the common law of England, and exists in the states of the Union solely by virtue of statute," and referred to chapter 830 of the Laws of 1873 as the legislation of this state upon the subject. Upon the authority of Carroll v. Collins, this court also decided In re Thorne's Will, 23 App. Div. 624, 48 N. Y. Supp. 313, affirmed 155 N. Y. 140, 49 N. E. 661. The court of appeals, in affirming the judgment, repeated and adopted the quoted language of the opinion of this court in the Carroll Case. There is no evidence of any written agreement or of any legal proceedings for the adoption of the defendant Greene. The only basis upon which the adoption rests is that already stated, unless it can be derived from the action of the Church Charity Foundation, hereafter set forth. Assuming for the moment that the Foundation had the right of transferring all its rights over an orphan, and her custody, and that it transferred such rights in Mrs. Greene's case by consenting to her adoption by the testator, it is not possible to say that the facts shown constitute an adoption, within the meaning and provisions of any statute relating to adoption. None of the acts of the testator and his family, as shown by the record, establish the legal relationship of an adopted child, unless there was a compliance with some statute of the state, and nothing appears to prove such compliance.

The counsel for Mrs. Greene contends that a method of adoption is provided in chapter 438 of the Laws of 1884, relating to the custody and care of children by orphan asylums and other charitable institutions, and that the provisions of that statute have been complied with. The seventh section provides that any child which certain corporations are authorized to bind out "may be placed by such corporation, by adoption, with some suitable person or persons, by a written instrument of adoption," which is to be executed by the officer of the corporation, and signed by the person with whom the child "shall be so placed by adoption." It is contended that the act of the Foundation, in consenting to an adoption of the child by the testator, amounted to an actual adoption. The Church

Charity Foundation was incorporated under the act for the incorporation of charitable and other societies (chapter 319, Laws 1848); and one of its objects was the care, support, and protection of orphan children. Its by-laws contained a provision that the Foundation might bind out or dispose of orphans in its charge, in a suitable manner, and a book of record of such disposition was to be kept. On this book there is an entry, "Sarah Frances Mahan was adopted by Captain and Mrs. Allen." The argument of the counsel for Mrs. Greene is based upon an incorrect use of the word "adoption." He speaks of the action of the Church Charity Foundation as if the power of adoption was conferred upon it by the statute. That is not the meaning of the word "adoption," as used in the statute. The Century Dictionary defines "adopt":

"To take or bring * * * into relationship, and confer the privileges belonging to that relation; * * * to accept, receive, or choose as one's own, make one's own, accept from some one else."

In other words, it is the act of the person who receives, not that of the person who gives. If this is not sufficient, the statute of 1873 itself defines the word when it says:

"Adoption * * * is the legal act whereby an adult takes a minor into the relation of a child and thereby acquires the rights and incurs the responsibilities of parent in respect to such minor."

The act of adoption is the act of the person taking the child. It does not relate to the act of the corporation from whose custody the child is taken. Adoption still remains the act of the person who takes and receives the child. The statute does not confer upon the charitable institution any power of adoption, for that is always the voluntary act of the person who takes the child into relations with himself. It necessarily follows that Mrs. Greene never became the legally adopted child of the testator, and that she is not entitled to any share in his residuary estate. It may be added that this is clearly in accord with the intention of the testator, as derived from his will. In that instrument he gave her a specific legacy of $10,000. This, by the codicil made after her marriage, was revoked, as the testator had advanced to her husband an amount in excess of the $10,000, and the testator provided for the cancellation of any further indebtedness of her husband to himself.

The only other question arises on the appeal of the defendant Frank Allen, who claims that he is entitled to the entire residuary estate, to the exclusion of the other nephews and nieces of the testator. His claim is that the remainder did not vest at the time of the testator's death, but only at and after the death of the widow; that when she died in August, 1896, he, being the sole survivor of all the nephews and nieces (the others were dead, leaving issue), was entitled to inherit exclusively. This depends on the question whether the eighth clause of the will created a vested or a contingent legacy. The testator, in a previous clause, gave, devised, and bequeathed his residuary estate to his wife, "to have, hold, use, and enjoy the same for and during the term of her natural life, or,

if she should remarry, then as long as she remains my widow." In case of her death or remarriage he made certain specific bequests, and then follows the eighth clause, already quoted. The trend of authority upon the rule of construction is evinced in the case of Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008, where the court of appeals (Andrews, J., speaking for the unanimous court) said:

"The presumption is that a testator intends that his dispositions are to take effect, either in enjoyment or interest, at the date of his death; and unless the language of the will, by fair construction, makes his gifts contingent, they will be regarded as vested. Words of survivorship, and gifts over on the death of the primary beneficiary, are construed, unless a contrary intention appears, as relating to the death of the testator."

The words under construction in that case were, "from and after the decease of my said daughters," and it was strenuously contended that these words indicated an intention to postpone the vesting until the happening of that event; but the court held that the words did not afford sufficient ground in themselves for adjudging that the remainder was contingent and not vested, and, unless their meaning was enlarged by the context, they were to be regarded as defining the time of enjoyment, simply, and not of vesting the title.

In 2 Redf. Wills (3d Ed.) p. 215, it is stated:

"The mere fact that one estate under a will is provided to take effect after the termination of an intervening one will not have the effect to prevent both estates becoming vested at the moment of the decease of the testator,—the one in possession, the other in prospect or remainder.

The same doctrine is stated, and other authorities cited, by Judge Thomas in his exhaustive work on Law of Estates Created by Will, where he says (volume 1, p. 259):

"The law favors the vesting of estates as soon as possible after the testator's death, and a will, in doubtful cases, is construed accordingly; but the question is one of intent."

And again at page 309, where he adds:

"A limitation is never construed into an executory devise when it may take effect as a remainder, nor as a contingent remainder when it can be taken to be vested."

Following these authorities, we must hold that the intention of the testator was to create a vested remainder in his residuary estate, to take effect at the time of his death, although the enjoyment by the legatees was to be postponed until the widow should remarry or die. And this is in harmony with the circumstances which existed at the time of the execution of the will, and in the extended interval between its date and the date of the testator's death, when he left surviving two nephews and three nieces. The record does not disclose any unpleasant relations with any of them. We may therefore assume that they had an equal standing in his affection. No fact or reason is shown why he should have preferred one nephew or niece to the exclusion of the others. The provisions of the will clearly show that the testator intended that such persons as would inherit in case of his intestacy should be the per-

sons entitled to his residuary estate. This could be determined only by the condition of affairs at the time of his death. It might be that some of his nephews and nieces might die without issue before that event, and that some might die leaving issue. He intended that such of these persons as were living at the time of his death should "succeed to and inherit" the estate according to the statute of distribution. This is the manifest intention of the whole will. The necessary deduction is that the will created a vested remainder at the time of the testator's death in all the five nephews and nieces, all of whom were alive at the time of the testator's death, and that they each took a one-fifth interest in the residuary estate, subject to the estate of the widow during her life or widowhood; the employment only being postponed until the termination of such primary estate.

The judgment should be affirmed on both appeals, with costs. All concur.

CULLEN, J. (concurring). I am of the opinion that the remainder in the testator's estate, after the death or remarriage of his wife, vested in the testator's next of kin at the time of his death, and was not subject to be devested by the death of any of the next of kin prior to the death or remarriage of the widow. I think this case can be distinguished from those cited by the learned counsel for the appellant Allen in support of a contrary rule:

1. There is here a direct and immediate gift, not merely a direction to distribute and divide at the termination of a precedent estate.

2. The bequest is substantially the same as one to the testator's next of kin. Whether it is also to his widow or not, it is unnecessary to determine, as the executors of the widow have acquiesced in the judgment of the special term excluding them from participation in the estate. Mr. Jarman says (Wills, *981):

"It is equally clear that where a testator gives real or personal estate to A. during his life, or for any other limited interest, and afterwards to his own next of kin, those who stand in that relation at the death of the testator will be entitled, whether living or not at the period of distribution,—there being nothing in the mere circumstance of the gift to the next of kin being preceded by a life or other limited interest to vary the construction; the result in fact being the same as if the gift had been 'to my next of kin, subject to a life interest in A.' The death of A. is the period, not when the objects are to be ascertained, but when the gift takes effect in possession."

The application of the rule to this case is emphasized by the fact that the bequest is to "such person or persons as would be legally entitled to succeed to and inherit the same in case I died intestate." If the testator had died intestate, his next of kin at the time of his death, and no other, would be entitled to take. In Doe v. Lawson, 3 East, 278, Lord Ellenborough said:

"The case is sufficiently clear not to require any further argument. * * * The limitation over is to 'such person and persons,' etc., 'as shall appear and can be proved to be his next of kin, in such parts and proportions as they would, by virtue of the statute of distributions, have been entitled to his personal estate if he had died intestate.' Now, when would they have been entitled to his personal estate if he had died intestate? At the time of his

death. Then the distribution must be made at such a time as will best meet the words of the will, which is at his death, when the title by the intestacy accrues."

In the case cited, as in the present, a life estate was given to the person who was held to be entitled to share in the remainder in fee.

3. It is contended that the construction we have placed on this will really determines that one-half of the testator's estate vested in his widow, to the possession of which she would succeed on her remarriage. It is urged that this is an unnatural intent to ascribe to the testator. Delaney v. McCormack, 88 N. Y. 174. This may be granted, but the appellant's contention does not mend the matter. According to his theory the class entitled to the remainder would be ascertainable at the termination of the widow's estate. Necessarily the widow would survive her remarriage, and thus in such an event become possessed of one-half of the principal of the estate. Under the appellant's construction of the will, there would be a direct inducement to the widow to remarry; for, if she married, she would get half of the principal of the estate, while, if she remained single, she would get no part of it. This is a more unreasonable intent to impute to the testator than the one we have adopted. The probability is that in the gift of the remainder the testator meant to exclude his widow, but he has not done so. As the executors of the widow have not appealed, we are not required to say whether the court could supply the omission. Smith v. Smith, 12 Sim. 317.

The judgment appealed from should be affirmed.