UNITED STATES TRUST CO. v. HOYT et al.

(Supreme Court, Appellate Division, First Department.     May 31, 1912.)

1. ADOPTION (§ 1*)—EXISTENCE AT COMMON LAW—STATUTES.

The adoption of children and strangers to the blood, while known to the law of the continent of Europe, was unknown to the common law of England, and exists in the United States solely by force of statute.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. § 15; Dec. Dig. § 1.*]

2. ADOPTION (§ 21*)—ADOPTED CHILDREN—STATUTES.

Laws 1884, c. 438, revised and consolidated the statutes relating to the custody and care of indigent and pauper children by orphan asylums and charitable institutions, provided for the adoption of such children, and declared that after adoption the foster parent and child should sustain toward each other the legal relation of parent and child, with all the rights and duties of that relation, except the right of inheritance, and except as respects the passing and limiting over of personal property under and by deeds, wills, devises, and trusts, as to which the adopted child should not be deemed the child of either of the foster parents.  In 1896, the Domestic Relations Law (Laws 1896, c. 272) was first passed, which contained a saving clause that the lawful prior adoption of a minor shall not be abrogated by the enactment of such law, but shall have the effect of an adoption thereunder.  *Held*, that where a child had been legally adopted from a charitable institution, under the act of 1884, it became, under the saving clause of the act of 1896, entitled to all the benefits following an adoption under the later act, which included the right to inherit from her foster parents.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 35–40; Dec. Dig. § 21.*]

3. ADOPTION (§ 21*)—ADOPTED CHILD—CHARITABLE INSTITUTION—AGREEMENT OF ADOPTION—EFFECT.

Where a child was adopted from a charitable institution under Laws 1884, c. 438, providing that such children and the foster parent should sustain toward each other the legal relation of parent and child, with all the rights and duties of that relation, except the right of inheritance, etc., an agreement under which the child was adopted, providing that she should· have such rights, including the right of inheritance, did not confer on her any right to inherit from her foster father as against third parties; her rights as to them, if any, being purely statutory.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 35–40; Dec. Dig. § 21.*]

4. ADOPTION (§ 21*)—ADOPTED CHILD—RIGHT TO INHERIT—WHAT LAW GOVERNS.

The right of an adopted child to inherit from a foster parent is determined by the law in force at the time of such parent's death.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 35–40; Dec. Dig. § 21.*]

5. ADOPTION (§ 20*)—RIGHT TO INHERIT—STATUTES.

The Domestic Relations Law (Laws 1909, c. 19 [Consol. Laws 1909, c. 14]) defines "adoption" as the legal act whereby any adult takes a minor into the relation of child and thereby acquires the rights and incurs the responsibilities of parent.  A "voluntary adoption" is declared to be any other than that of an indigent child or one who is a public charge from an asylum or from a charitable institution, and, after providing the proceedings for voluntary adoption, declares (section 64) that "thereafter" the parents of the minor are relieved from all parental duties, responsibilities for, and rights over such child, or his property by descent or succession, but the foster parent and the minor sustain the legal relation of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

parent and child with all the rights and duties of that relation, including the right of inheritance, and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if the minor were the legitimate child of the adopting person, but as respects the passing and limitation over of real and personal property, dependent, by the provisions of any instrument, on the foster parent dying without heirs, the minor is not deemed the child of the foster parent so as to defeat the rights of remaindermen. The statute then proceeds to provide a procedure for the adoption of children from charitable institutions without containing any further provision as to the rights of children so adopted. *Held*, that a child previously adopted from a charitable institution, who under the saving clause in the Domestic Relations Law was entitled to all the rights of children similarly adopted thereunder, her adopted parents having no other children, was the sole next of kin of her foster father under the statute of distributions, and therefore was entitled to take under a deed of trust for the benefit of her foster father, remainder on his death to his children.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 29–32; Dec. Dig. § 20.*

For other definitions, see Words and Phrases, vol. 1, pp. 206–210; vol. 8, p. 7566.]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by the United States Trust Company against Dorothy Hoyt and others. From a judgment entered at Special Term determining that Dorothy Hoyt, an adopted daughter of Frank R. Hoyt, was entitled to inherit certain trust funds as sole heir and next of kin, defendants Isabel and Jesse Hoyt appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

William W. Scrugham, for appellants.
Henry W. Jessup, of New York City, for respondent.

DOWLING, J. On June 1, 1896, Rhoda E. Hoyt executed and delivered to the United States Trust Company a deed of trust, by virtue of which property aggregating in value $86,798.75 was transferred upon the following trusts:

"To have and to hold said property to the party of the second part (the United States Trust Company), its successors and assigns, in trust, however, for the following uses and purposes, namely, to hold, manage, invest and reinvest the same; to collect and receive interest, income and profits thereof, and, after deducting all proper charges and expenses, to pay over the said interest, income and profits to my son Frank R. Hoyt for and during his natural life, and upon the death of my son Frank R., to pay over the said interest, dividends, income and profits to Margaretta A., the wife of my said son Frank R., if she should then be living, during the term of her natural life, or so long as she shall remain his widow, and, upon the death or remarriage of the said Margaretta A. or upon the death of my said son Frank R. if the said Margaretta A. should not be living at the time of the death of my said son Frank R. to divide the principal of said trust fund or the securities in which it may then be invested into as many equal shares as there shall be children of my said son Frank R. then living, and to pay over to each of such children of my son Frank R. one equal share or portion of said principal. In the event that any of the children of my son Frank R. shall have died before the time of the distribution of the principal as above provided for, leaving a child or children him or her surviving, such child or children

shall take the share or portion of its or their deceased parent and in equal shares if more than one. In case there shall be no issue of my son Frank R. living at the time of the disposition of the principal as above provided for, then the said principal shall be paid over to and among the persons who are then next of kin of my said son Frank R. in the manner and proportions directed by the laws of the state of New York for the distribution of the estates of persons dying intestate."

At the same time, Rhoda E. Hoyt executed and delivered similar deeds of trust, whereby she created funds approximately the same amount upon similar trusts for the benefit of her other children, Jesse Hoyt, Isabel Hoyt Bangs, and Reuben M. Hoyt.

On November 16, 1901, Rhoda E. Hoyt made her last will and testament, whereby she devised certain real estate in the town of Watkins to her son Frank and to his wife, Margaretta, for their use or that of the survivor for life, with remainder to their adopted child "Dorothea."

On December 6, 1901, Rhoda E. Hoyt died, and her said last will and testament was duly admitted to probate by the Surrogate's Court of New York County.

Margaretta A. Hoyt died before her husband, Frank R. Hoyt; the latter dying intestate February 24, 1911. They had no issue. He left him surviving his adopted daughter, Dorothy, his brother Reuben, his sister Isabel, and the three children of his deceased brother, Jesse. Dorothy Hoyt had been adopted by Frank R. Hoyt and Margaretta A., his wife, from the Nursery and Child's Hospital on or about December 4, 1894, pursuant to the provisions of chapter 438, Laws 1884. She was then about one year old.

The question presented by this appeal is whether Frank R. Hoyt's adopted daughter Dorothy is the sole next of kin of her foster father and as such entitled to all the property as to which he died intestate, or whether his brother, sister, nephew, and nieces are his next of kin, under the statute of distribution of this state. The answer to this question determines the right to the principal of the trust fund in controversy, with any accumulations of interest or income therefrom.

[1] The status and rights of adopted children are of purely statutory creation. The adoption of children and strangers to the blood was known to the Athenians and Spartans, the Romans and ancient Germans, and is recognized in both the French and Spanish law; but it was unknown to the common law of England, and exists in the states of the Union solely by force of statutes. Carroll v. Collins, 6 App. Div. 106, 40 N. Y. Supp. 54; Matter of Thorne, 155 N. Y. 140, 49 N. E. 661. One of the earliest statutory references to adoption occurs in chapter 244, Laws 1849, entitled "An act to incorporate the American Female Guardian Society," wherein section 6 conferred upon the society, in case the child had been surrendered to them by its natural or legal guardians by an instrument in writing, authority "to place such child by adoption or at service in some suitable employment and with some proper person or persons, conformably to the laws of this state in regard to the binding out of indigent persons." The first general statute referring to the subject-matter enacted in this state was chapter 830, Laws 1873, entitled "An act to legalize the

adoption of minor children by adult persons." By its terms, "adoption" was defined as:

"The legal act whereby an adult person takes a minor into the relation of child, and thereby acquires the rights and incurs the responsibilities of parent in respect to such minor."

Its operation was limited to the cases prescribed in the act. The consent of the parents of the child, or if dead of an adult person having its custody, was required, as well as that of the child if over the age of 12 years. A judicial proceeding was required before the county judge of the county wherein the person adopted resided, in which he was to examine all the persons required to give their consent to the adoption and the person adopting as well. Section 9 provided for the entry of the judge's order, directing that the "child shall thereafter be regarded and treated, in all respects, as the child of the person adopting." Section 10 then provides:

"A child, when adopted, shall take the name of the person adopting, and the two thenceforth shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance, except that as respects the passing and limitations over real and personal property, under and by deeds, conveyances, wills, devises and trusts, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting."

Section 13 directs that:

"Nothing herein contained shall prevent proof of the adoption of any child, heretofore made according to any method practiced in this state, from being received in evidence, nor such adoption from having the effect of an adoption hereunder; but no child shall hereafter be adopted except under the provisions of this act, nor shall any child that has been adopted be deprived of the rights of adoption, except upon a proceeding for that purpose."

The first general provision for adoption of children from institutions is to be found in chapter 438, Laws 1884, entitled "An act to revise and consolidate the statutes of the state relating to the custody and care of indigent and pauper children by orphan asylums and charitable institutions." By section 7 thereof such corporations were authorized to place children for adoption with suitable persons by a written instrument to be joined in by the corporation and by the person adopting and his wife. Section 8 prescribes:

"Each person taking a child by adoption, in pursuance of this act, is hereinafter designated as the foster parent of such child, and such foster parent and such child shall after such adoption, sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance, and except that as respects the passing and limiting over of real and personal property under and by deeds, conveyance, wills, devises and trusts, said child so adopted shall not be deemed to sustain the legal relation of child to either of its foster parents, and such instrument of adoption shall contain in substance the foregoing provisions of this section, and the further provision that the foster parents of such child shall treat such child, in all respects, as their own should be treated."

It will be noted that with the exception of requiring that an instrument of adoption should be executed, containing the recital of the rights of the adopted child, this section is almost an exact duplicate of the act of 1873, except the provision that the child should take the

name of its foster parents, and that is to be found in the following section (9).  Sections 12 and 13 provided the method of cancellation of the adoption, on the application either by the foster parent, corporation, or a next friend of the child.  No court proceedings were required for the adoption, but only for the cancellation thereof.   In 1884, therefore, after the passage of this act, two methods of adoption were legally authorized:  (1) From private persons, by judicial proceeding;  (2) from institutions, by agreement in writing.  In either case the rights of the adopted child were identical, and in neither case was there any right of inheritance.  The Legislature in 1887 enacted chapter 703 of the Laws of that year, entitled "An act to legalize the adoption of minor children by adult persons."  This provides as follows:

"Section 1. Section 10 of chapter 830 of the Laws of 1873, entitled 'An act to legalize the adoption of minor children by adult persons,' is hereby amended so as to read as follows: Sec. 10. A child, when adopted, shall take the name of the person adopting, and the two thenceforth shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation *including* the right of inheritance and the heirs and next of kin of the child so adopted shall be the same as if the said child was the legitimate child of the person so adopting, except that as respects the passing and limitation over of real and personal property, under and by deeds, conveyances, wills, devises and trust, dependent upon the person dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remaindermen, and in case of the death of the person so adopted the person adopting as above provided shall, for the purpose of inheritance sustain the relation of parent to the person so adopted."

It will be noticed that this is an amendment only to the act of 1873, is by its terminology only a repetition (with changes) of that of the act of 1873, and that neither by the title nor by anything ·in the text does it refer to adoptions under the act of 1884.  In Simmons v. Burrell, 8 Misc. Rep. 388, 28 N. Y. Supp. 625, however, it was held that where a child had been adopted pursuant to the provisions of the act of 1849, from the Female Guardian Society, such adoption having been duly had on December 13, 1861, the saving clause in the act of 1873 (section 13) brought adoptions theretofore had, pursuant to any method practiced in this state, within the purview of that statute, and gave all persons thus adopted the right to inherit and take as next of kin the property of the intestate who had adopted them, after the amendment of 1887.  This proceeded upon the theory that an adoption legally made in 1861, under the act of 1849, and by the act of 1873 recognized as having the force of an adoption thereunder, became subject to the amendment of 1887 to the law of 1873.  But nothing in the Burrell Case bears upon the effect to be given to an adoption under the independent act of 1884.  In Carroll v. Collins, 6 App. Div. 106, 40 N. Y. Supp. 54, the adoptions prior to 1873, which were deemed within the scope of that act, were limited to those practiced under the sanction of law; that is, those authorized by some statute like the one of 1849.  It will be seen that, after the amendment of 1887, the two classes of adopted children still existed:  (1) Those taken from private custody; (2) those taken from institutions.  To the

former of these, the right of inheritance had expressly been given; to the latter, it had not been granted in terms.

In 1896, the Domestic Relations Law was first passed (chapter 272, Laws 1896). Article 6 thereof relates entirely to the adoption of children, and embraces sections 60 to 68, inclusive. The first section (60) provides:

"Adoption is the legal act whereby an adult takes a minor into the relation of child and thereby acquires the rights and incurs the responsibilities of parents in respect to such minor. Hereafter, in this article, the person adopting is designated the 'foster parent.' A voluntary adoption is any other than that of an indigent child, or one who is a public charge from an orphan asylum or charitable institution."

It contains the saving clause:

"Proof of the lawful adoption of a minor heretofore made may be received in evidence, and any such adoption shall not be abrogated by the enactment of this chapter and shall have the effect of an adoption hereunder."

Section 61 provides what consents are requisite. Section 62 prescribes the requisites of voluntary adoption; section 63, the form of the order therein. A judicial proceeding is provided before the county judge or surrogate of the county wherein the foster parent resides, and the persons whose consent is required must appear ,and acknowledge the papers before the court. Section 63 concludes:

"Such order and the instrument and consent, if any, mentioned in the last section must be filed and recorded in the office of the county clerk of such county" (i. e., where the foster parents reside).

Section 64 declares the effect of adoption as follows:

"*Thereafter* the parents of the minor are relieved from all parental duties towards, and of all responsibilities for, and have no rights over such child or his property by descent or succession. The child takes the name of the foster parent. His rights of inheritance and succession from his natural parents remain unaffected by such adoption. The foster parent or parents and the minor sustain toward each other the legal relation of parent and child and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other, and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting; but as respects the passing and limitation over of real and personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the minor is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

Then follows section 65, providing for adoptions from charitable institutions, which provides only for: (1) The placing of children for adoption by institutions, so far as practicable, with those of the same religious faith as the child's parents; (2) the requisites of the agreement of adoption, all the parties to which, save the officers of the institution, must appear before the court, *and such judge or surrogate may thereupon make the order of adoption provided by this article.* Such instrument and order shall be filed and recorded in the office of the clerk of the county where the foster parent resides, and the adoption shall take effect from the time of such filing and recording. Section 66 then provides the method of revoking a voluntary adoption; section 67, of revoking on the child's application an adoption from a

charitable institution; and section 68, of revoking such an adoption on the application of the foster parent.

A careful examination of all the provisions of this chapter and comparison with the prior statutes can, it seems to me, lead to but one conclusion: That the distinction of voluntary adoptions and those from institutions was one of form and not of substance; that it was maintained only by reason of the different procedure required where a private person was giving up the child, as distinguished from a relinquishment by an institution. There is no material difference in the judicial proceeding; the form of the instrument in writing required to be executed is the same, allowing for the difference in status of the parties relinquishing rights over the child; the order is the same in either case. As the main consideration in adoption is the good of the child, the state is as watchful of the interest of the minor coming from the care of an institution as from that of an individual. How then can it be said that any legislative intent to deprive the former of the right to inherit, which is given the latter, can be inferred? If section 64 followed present section 65, there could be no question that the word "thereafter" referred simply to the time of filing the one order of adoption required by the act, and conferred the right of inheritance upon both classes of minors. I cannot bring myself to believe that because the definition of the effect of adoption precedes the enumeration of certain technical differences in the form of consent, due to the fact that a corporation is surrendering the child and not an individual, the Legislature meant unmistakably to deprive public charges, who most needed the protection of parents, of the rights conferred on others.

There is substantially no difference in the form or substance of the agreement, nor in the procedure, nor in the order of adoption. In both cases the person adopting becomes the foster parent. In neither case can the adoption be revoked save by a judicial proceeding. Unless section 64 defines the effect of all adoptions had under its provisions, there is no provision of any kind defining the rights of a child thereafter adopted from an institution, and no child could thereafter be adopted save in pursuance thereof (section 60); for in the schedule of laws repealed following the act of 1896, we find that not only chapter 830, Laws of 1873, and chapter 703, Laws 1887, had been repealed, but also all of chapter 438, Laws 1884, defining the rights and duties of foster parents and of children adopted from institutions, and so much of section 7 as gave the right to a corporation to place a child for adoption. Every other provision in regard to such adoption was repealed, so that, after the Domestic Relations Law took effect, children were adopted from institutions solely under its authority, and their rights must be found solely within its provisions. It seems that both justice and reason require that the act shall be so construed that the rights and liabilities of both foster parent and minor as therein declared became operative upon the filing of any order of adoption made pursuant to its provisions, and that all adoptions made under it, whether from institutions or otherwise, conferred upon the adopted child the right of inheritance.

[2] As Dorothy Hoyt had been legally adopted under the provisions of the act of 1884, she became, under the saving clause of the act of 1896, entitled to the benefits following adoption thereunder, which included the right to inherit from her foster parents.

[3] It may be here remarked that these rights of inheritance had been conferred upon her, so far as Frank R. Hoyt and his wife could do it, by the agreement under which they adopted her, in which they had provided that she should have all the rights and be subject to all the duties of the relation of parent and child, including the right of inheritance. But that agreement conferred no right of inheritance on her as against third parties, and her rights, if any, are purely statutory.

[4] It is conceded, however, that the question of the right of an adopted child to inherit from a foster parent is determined by the law in force at the time of the foster parent's death. Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800, affirmed 162 N. Y. 635, 57 N. E. 1108; Theobald v. Smith, 103 App. Div. 200, 92 N. Y. Supp. 1019.

[5] When Frank R. Hoyt died, the law governing the rights of adopted children was the Domestic Relations Law (chapter 19, Laws 1909 [Consol. Laws 1909, c. 14]). Article 7 thereof related to the adoption of children. The arrangement and provisions of the act of 1896 were followed in this later act. The sections of the act of 1896 were reproduced; the numbers alone varying. Thus section 60 of the act of 1896 became in the new act 110, and so on; the same divisions being preserved. The section defining the effect of adoption is numbered 114, following the one providing for the filing of the order (113) and beginning with the same word "thereafter." The following section (115) refers to adoptions from charitable institutions. For the same reasons given in discussing the act of 1896, I am convinced that the right of inheritance still attached under this later enactment to all children lawfully adopted from public institutions, whether adopted under its provisions or under those of the act of 1884. It contained the same saving clause as to prior adoptions, and the schedule of laws repealed shows the entire repeal of the act of 1873 (chapter 830) and 1887 (chapter 703) and all of chapter 438, Laws 1884, except section 2 and the first sentence of section 4, which do not refer to adoption.

As Dorothy Hoyt, at the time of her foster father's death, intestate, had the right of inheritance from him given to her by statute, she was his sole next of kin under the provisions of the statute of distribution of this state, and by the provisions of the trust deed became entitled to the principal and accumulated income of the fund. Nor is the contention sound that the limitations in section 114 of the Domestic Relations Law defeat her rights. For in Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 78 N. E. 697, 116 Am. St. Rep. 536, where a trust had been created by Eliza Hunt for the benefit of Frances J. Dyett for the term of her natural life and after her decease to her heirs at law, it was held that a legally adopted child (adopted 30 years after the making of the trust deed) answered the description of an heir at law and was entitled to the remainder. That case was not so strong a one as this, perhaps, for the adopted child, as in that case there

was no general statute of adoption in existence when the trust deed was made, where in the present case an adoption had legally been had before the trust deed was executed. Still the court said:

"The argument that the intention of the grantor will be violated by allowing plaintiff to inherit, while superficially a potential one, does not stand the test of careful analysis. Of course, the donor when he executed his deed could not apprehend that, at a given date, many years hence, statutes would be enacted providing for the adoption of children and conferring upon them the right of inheritance. But, upon the other hand, he must be assumed to have known that the lines of inheritance were governed by statute and at any time could be changed. He was evidently interested in providing for the life beneficiary in a certain manner down to the moment of her death, and did so. But after that, apparently, he had no desire to limit the succession to his real estate to any definite line of persons. He directed generally that it should go to his heirs at law; that is, to the persons whom the law should designate as his heirs when the time arrived. He threw the responsibility of selection upon the law. He took his chances upon the happening of just what did happen."

And the court quoted with approval from Kohler's Estate, 199 Pa. 455, 49 Atl. 286, with reference to an adopted child:

"The will of John Kohler, father of the cestui que trust, was written 36 years before the decree of adoption, and that event, therefore, was not reasonably within the contemplation of the testator. But as he gave the estate to those persons to whom the law would give it in case of intestacy, he cannot be said to have had any particular class of heirs or next of kin in view, and he committed the question of determining who should take it to the law itself."

The decision in Matter of Leask, 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158, 134 Am. St. Rep. 866, 18 Ann. Cas. 516, is not to the contrary, for there the court simply held where the income of a trust fund was payable to Hoagland for life and upon his death "leaving a child or children surviving him" the principal was to be paid to such child or children, in default of which it was to revert to the residuary estate, that an adopted child did not come within the intent or meaning of the testator and could not take the principal.

The judgment appealed from should be affirmed, with costs to both appellants and respondent, payable out of the fund.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. I am unable to concur in the affirmance of this judgment.

Prior to the enactment of the Domestic Relations Law (chapter 272 of the Laws of 1896), there were two systems in force relating to the adoption of children, and the rights given to the adopted child differed materially, depending upon the particular statute under which the child was adopted. Those adopted under the provisions of chapter 830 of the Laws of 1873, as amended by chapter 703 of the Laws of 1887, gave to the adopted child the legal relation of a child and all the rights and subject to all the duties of that relation including the right of inheritance, and undoubtedly, if the respondent had been adopted under the provisions of this act, she would have been the next of kin of the life tenant. An adoption under the act of 1873, however, only applied

to the children whose natural parents had consented to the adoption and whose adoption had been legally authorized by the order of a court specified in the act. The other method of adoption was that provided by chapter 438 of the Laws of 1884, which related to the adoption of children from orphan asylums or other institutions for the care of destitute or friendless children. The adoption in this case was under an instrument of adoption executed by the institution having the care and custody of the child and by the foster parent which was provided for by section 7 of the act. By section 8 of the act it is provided that each person taking a child by adoption in pursuance of the act is designated as the foster parent of such child, and such foster parent and such child shall, after such adoption, sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation excepting the right of inheritance, and except that as respects the passing and limiting over of real and personal property under and by deeds, conveyances, wills, devises, and trusts, said child so adopted shall not be deemed to sustain the legal relation of child to either of its foster parents.

The record discloses that on the 4th of December, 1894, by an instrument in writing executed by Frank R. Hoyt, the beneficiary for life of the fund in question, and his wife and the Nursery and Child's Hospital, the said Frank R. Hoyt and Margaretta A. Hoyt, his wife, did, pursuant to section 7 of chapter 438 of the Laws of 1884, adopt the respondent and become her foster parents. When the respondent was therefore adopted by Frank R. Hoyt and his wife, she acquired no right of inheritance, and by express provision of the statute was not to be deemed to sustain the legal relation as respects the passing and limiting over of real and personal property under and by virtue of deeds, conveyances, wills, devises, and trusts. This act remained in force unamended by the Legislature down to the time of the passage of the Domestic Relations Law (chapter 272 of the Laws of 1896), to which attention will be called. Chapter 703 of the Laws of 1887 was an amendment to chapter 830 of the Laws of 1873 and could only affect a child adopted under the provisions of that act.

Prior to the year 1892, commissioners had been appointed for a revision of the general laws of this state, and by chapter 677 of the Laws of 1892 the first chapter of such general revision known as the "General Laws" was passed. By section 32 of that act, which was known as the "Statutory Construction Law," it was provided:

"The provisions of any chapter of the revision of the general laws, of which this chapter is a part, so far as they are substantially the same as those of laws existing at the time such chapter takes effect, shall be construed as a continuation of such laws, modified or amended according to the language employed in such provisions, and not as new enactments."

The Domestic Relations Law (chapter 272 of the Laws of 1896) constituted chapter 48 of the General Laws of which chapter 677 of the Laws of 1892 was a part. That article provided for the adoption of children. It recognized an adoption under the act of 1873 and its amendments as a voluntary adoption, and sections 60, 61, 62, 63, and 64 of that act re-enacted the provisions of the act of 1873 in relation

to such adoptions.   By section 64 of that act, which contained substantially the provisions of the act of 1873, it was provided that the foster parent or parents and the minor child sustain toward each other the legal relation of parent and child and have all the rights and are subject to all the duties of that relation including the right of inheritance from each other.   Section 65 of the act provides for the class of adoptions which had been provided for by the act of 1884.   It authorizes the adoption of a child from an orphan asylum or charitable institution, and provides that the same shall be effected by the execution of an instrument signed and sealed in the corporate name of such corporation and signed by the foster parent or parents and by the child if over 12 years of age, all of whom should appear before the county judge or surrogate of the county where such foster parents reside and be examined, except that such officers of the charitable institution need not appear, and such judge or surrogate may thereupon make the order of adoption provided for by the article.   There is no provision in this chapter for the rights that either the foster parents or the adopted child sustain toward each other by virtue of this adoption.   In the schedule of laws repealed annexed to this section (chapter 438 of the Laws of 1884), section 6, a portion of section 7, and section 8, and the subsequent portions of the act, are repealed.

In view of the repeal of section 8 of the Laws of 1884 and the failure of the Legislature to re-enact any provision as to the status of a child adopted from charitable institutions under section 65 of the act, I think the statute could be construed so as to make the provisions of section 64 of the act applicable to an adoption from a charitable institution so far as it affected the right of inheritance from the foster parent; but I do not think we can extend this right of a foster child so as to make such child the heir at law or next of kin of the foster parent, so that it could take as remainderman under a deed or will executed by a person other than the foster parent, which contained a remainder over to the children or heirs at law and next of kin of the foster parent.   Under the statute of distributions (section 2732 of the Code of Civil Procedure), a child of a person dying intestate becomes a next of kin because of his relation to the intestate as a child, and a person therefore dying intestate leaving children, his children legally occupying that relation to him become his next of kin.   It is quite clear that the provisions of section 60 of the Domestic Relations Law of 1896, now section 110 of chapter 19, Laws 1909, have no application to an adoption under the act of 1884, and the respondent must become a next of kin of the life tenant under section 64 of that act, now section 114 of chapter 19, Laws 1909.   The deed in question, which was executed June 1, 1896, provided that, upon the death of the grantor's son, Frank R., if his wife should not be living:

His trustees should "divide the principal of said trust fund or the securities in which it may then be invested into as many equal shares as there shall be children of my said son Frank R. then living, and to pay over to each of such children of my son Frank R. one equal share or portion of said principal. * * * In case there shall be no issue of my son Frank R. living at the time of the disposition of the principal as above provided for, then the said principal shall be paid over to and among the persons who are then next of kin of my said son Frank R. in the manner and proportions directed by the

laws of the state of New York for the distribution of the estates of persons dying intestate."

It seems to be conceded that the adopted daughter could not take under this clause as a child of Frank R., and that conclusion is clearly sustained by Matter of Leask, 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158, 134 Am. St. Rep. 866, 18 Ann. Cas. 516.

The first question presented, it seems to me, is whether this deed of trust contains a limitation over of real or personal property dependent on the foster parent Frank R. "dying without heirs." It is difficult to conceive of a phrase more inappropriate than this "dying without heirs." Certainly any one who would be next of kin of Frank R. would be his heir; but I think the only construction that can be given to this provision must be that an adopted child shall not be deemed a child of the foster parent so as to defeat the rights of remaindermen under an instrument by which a remainder over is limited to the heirs or next of kin of the foster parent. Here the court below held, and I understand it to be conceded in the prevailing opinion, that the respondent could not take under the provision of the trust deed which gave the remainder to the children of the life tenant, but it was held by the court below, and that is sustained by the prevailing opinion, that this adopted child can take as next of kin of the life beneficiary.

In construing this deed of trust, we are required to carry out the intention of the donor. She was the mother of Frank, the life beneficiary. She provided that the income of the property should be paid to Frank during his life, and upon his death should be divided among his children, making provisions for the issue of a deceased child to take the parent's share, and then she provided that, if Frank should die without leaving issue, the money should be divided among his next of kin according to the laws of the state of New York. I can find nothing in this instrument to indicate an intention on behalf of the donor that, upon the failure of Frank leaving issue of his blood surviving, the respondent should take, because as an adopted child she would have been his next of kin. If we apply the principle stated in the Leask Case, supra, it certainly seems to me that, if the adopted child is excluded as a child, she is also excluded as a next of kin. And that this construction is in accordance with the limitation contained in section 64 of the Domestic Relations Law of 1896 (now section 114 of chapter 14 of the Consolidated Laws) seems to me was expressly determined by Matter of Leask, supra, where, at page 199 of 197 N. Y., at page 654 of 90 N. E. (27 L. R. A. [N. S.] 1158, 134 Am. St. Rep. 866, 18 Ann. Cas. 516), the court said:

"Under the provision of our statute of adoption, which declares that, in regard to the limitation over of common property dependent on the foster parent dying without heirs, the minor is not deemed the child of the foster parent so as to defeat the rights of remaindermen, the residuary legatees in the present case are to be considered such remaindermen, and the adoption of the appellant by the life tenant is ineffectual to defeat their right to take. * * * The term 'remaindermen' in the statute of adoption was evidently employed by the Legislature in the broad sense of those who might ultimately be entitled to take the estate, whether they were technically remaindermen under the definition of the common law or otherwise. To allow the claim of the appellant to defeat their rights would be to disregard the plain declaration of our statute in regard to the effect of adoption."

And the court cites with approval the opinion of Cullen, J., now Chief Judge of the Court of Appeals in Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800, when he doubted:

"Whether a testator really intended that his adopted child should take even under a residuary clause which directed that the residuum of the estate should descend and be distributed according to the laws of the state of New York. He declared that the test was not what the status of the adopted child is at law, but how such child is treated in the nomenclature or vocabulary of the testator. Applying that test in the present case, we find it impossible to believe that, when Hudson Hoagland spoke of his nephew leaving a child or children surviving him, he could have had an adopted child or children in contemplation."

These decisions, it seems to me, construe this provision of the Domestic Relations Law as preventing an adopted child, certainly under the Domestic Relations Law of 1896, now section 120 of the Domestic Relations Law of 1909, from taking either as child, issue, heir at law, or next of kin of a person to whom was given a life estate when there was a remainder over to heirs at law or next of kin. This is based upon the assumed intention of the testator, donor, or grantor in the instrument creating the remainder over as excluding an adopted child of the life beneficiary, in connection with the statute which provides that such an adopted child shall not be deemed the child of the foster parent so as to defeat the rights of remaindermen.

It follows, therefore, that the judgment should be reversed.