HELEN MORTON and EDITH LIVINGSTON MORTON EUSTIS, Respondents, *v.* AMERICAN SECURITY & TRUST COMPANY, as Trustee under the Last Will and Testament of ANNA LIVINGSTON MORTON, Deceased, and Others, Respondents, Impleaded with LEWIS PETER MORTON, MIRIAM MORTON and WILLIAM HAZLETT MINOR, JR. (Formerly WILLIAM HAYES MORTON), Appellants.*

First Department, May 7, 1937.

* Affg. 159 Misc. 166.

*Francis R. Appleton, Jr.*, of counsel [*C. C. Turner, Jr., T. F. Davies Haines* and *Gerhard R.. Gerhard* with him on the brief], guardian ad litem for the appellants Lewis Peter Morton and Miriam Morton.

*Ralph Royall* of counsel [*Ehrich, Royall, Wheeler & Walter*, attorneys], for the appellant William Hazlett Minor, Jr.

*Walter D. Fletcher* of counsel [*William M. Hobson* and *Atwood H. Miller* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed*, attorneys], for the respondents Helen Morton and Edith Livingston Morton Eustis; [*Joseph W. Goodwin* with him on the brief; *Morris & McVeigh*, attorneys], for the respondents John Philip Rutherfurd, Hugo Rutherfurd, Winthrop C. Rutherfurd, Jr., and Alice Margaret Mary Rutherfurd; and [*Lewis Spencer Morris*, attorney and guardian ad litem], for the respondent Guy Gerard Rutherfurd.

*John Caldwell Myers* of counsel [*John M. Whelan* with him on the brief], guardian ad litem for the respondent Helen Louise Corcoran Eustis.

MARTIN, P. J. In this proceeding the parties seek the construction of certain provisions of the will of Anna Livingston Morton, deceased, disposing of real property situated within this State. The appeal is from the judgment in so far as it holds that the adopted children of Mary Morton, a daughter of the said Anna Livingston Morton, have no interest in the real property described in the complaint.

Anna Livingston Morton died August 14, 1918, a resident of the District of Columbia, leaving a will dated January 15, 1916, and two codicils, all of which have been admitted to probate in the District of Columbia. At the time the will and codicils were executed the husband of the testatrix, Levi P. Morton, and her four daughters were living. Two of her daughters, Alice and Edith, were married and had children. Her husband and three of her daughters survived the testatrix. The daughter Alice died before her mother and left six children, all of whom survived the testatrix.

Mary Morton, a daughter of the testatrix, died on April 20, 1932, a resident of Pennsylvania. She was unmarried and left no issue. She left her surviving two sisters and five children of her deceased sister, Alice. She also left her surviving two children whom she had adopted in Pennsylvania, Louis Peter Morton, adopted June 17, 1925, and Miriam Morton, adopted January 10, 1930. She

had also adopted in Pennsylvania, on November 21, 1927, William Hayes Morton, but relinquished this infant on February 20, 1930, to an institution in California. He was thereafter adopted in California by William Hazlett Minor and his wife, and is now known as William Hazlett Minor, Jr.

By article fourth of the will of Anna Livingston Morton, the residue of her estate was given to her executor in trust to be held by it in as many equal shares as she should leave children her surviving or children predeceasing her, who should leave issue her surviving, the income of each share to be paid to the beneficiary thereof during her life. Upon the death of the beneficiary, the testatrix gave the share to the " issue, if any," and, in default of issue, to the beneficiary's " heirs at law and next of kin, to be equally divided among them, *per stirpes* and not *per capita,*" subject, however, to the execution by the beneficiary of certain powers conferred, including, by subdivision fourth, the power to the beneficiary leaving no issue to dispose by will of one-half of the principal of her share, the remaining half of said share to go to the beneficiary's " heirs at law and next of kin," as above provided.

Mary Morton left a will dated May 5, 1930, which has been duly admitted to probate by the Surrogate's Court of New York county. Under it she gave $10,000 in trust for the infant William Hayes Morton (now known as William Hazlett Minor, Jr.), and she exercised her power of appointment under the will of her mother by creating a trust for the benefit of her adopted children, Louis Peter Morton and Miriam Morton.

The trial court has ruled that none of Mary Morton's adopted children were her " heirs at law and next of kin," within the intent and meaning of the will of her mother, Anna Livingston Morton; and further ruled that section 114 of the Domestic Relations Law bars the adopted children from taking " as heirs at law and next of kin."

On behalf of the adopted children it is contended that the plain presumption is that Anna Livingston Morton, by the words, " heirs at law and next of kin," intended the persons who would have been entitled by statute to the principal of Mary Morton's trust fund had she died intestate owning such fund absolutely; that the whole tenor of the will confirmed that the testatrix had no other intention, and neither the fact that the adopted children were adopted after the death of Anna Livingston Morton, nor the fact that Mary Morton was only given power of appointment over one-half of her trust, is evidence of a contrary intention.

The courts of this State have considered claims asserted by adopted children to gifts to " heirs at law " or " next of kin " and have decided in favor of the adopted children. (*Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127; *United States Trust Co.* v. *Hoyt*, 150 App. Div. 621; *Bridenbaker* v. *Kissell*, 215 id. 751; *Kemp* v. *New York Produce Exchange*, 34 id. 175.)

The test, however, is not the status of the adopted children at law but the intention of the maker of the will and the meaning of the language used therein. (*New York Life Insurance & Trust Co.* v. *Viele*, 161 N. Y. 11; *Tillman* v. *Davis*, 95 id. 17; *Dodin* v. *Dodin*, 16 App. Div. 42; *Matter of Walter*, 270 N. Y. 201.)

The courts of the domicile of the testatrix in this case have construed the meaning of the words " heirs at law and next of kin," as used by the testatrix in her will. In *Rutherfurd* v. *American Security & Trust Co.* (12 F. [2d] 155) the Court of Appeals for the District of Columbia, affirming the Supreme Court of the District, said: " in our view, a reading of the will as a whole irresistibly leads to the conclusion that the testatrix intended to restrict the objects of her bounty, as to both real and personal property, to her lineal descendants, except as otherwise expressly provided; and, if we are correct in this conclusion, the terms ' heirs at law and next of kin ' must be given such an interpretation as to effectuate the expressed intent of the testatrix."

The cases most favorable to the contention of the appellants are *Gilliam* v. *Guaranty Trust Co.* (186 N. Y. 127) and *United States Trust Co.* v. *Hoyt* (150 App. Div. 621). A consideration of the factual situations in those cases indicates that there is nothing in either case evidencing an intention to exclude adopted children. In the *Gilliam* case, apparently, the donor of the trust was not related by blood to the beneficiary, and such donor appeared to be concerned only with the life beneficiary and was indifferent as to the disposal of the principal of the trust after her death. Judge Hiscock, writing for the Court of Appeals, said: " He was evidently interested in providing for the life beneficiary in a certain definite manner down to the moment of her death, and did so. But after that apparently he had no desire to limit the succession to his real estate to any particular definite line of persons. He directed generally that it should go to her heirs at law; that is, to the persons whom the law should designate as her heirs when the time arrived. He threw the responsibility of selection upon the law. He took his chances upon the happening of just what did happen. There is nothing to show that he was related by blood to Miss Dyett and her heirs, and if the statute gave her the right and she desired in default of children to adopt plaintiff, and by force of

law establish in all other respects the same relationship of parent and child which natural birth would have created, I am not able to think that the passage of the grantor's real estate to such child will be any serious violation of his desire and direction that it should go to her heirs at law."

In the *Hoyt* case, Rhoda E. Hoyt created a trust for the benefit of her son, Frank R. Hoyt, during his life, and in the event that his wife survived him, for the period of such survivorship for her benefit should she remain unmarried. Thereafter the principal was to go to issue, and, failing issue, to " the persons who are then next of kin of my said son, Frank R., in the manner and proportion directed by the laws of the State of New York for the distribution of the estates of persons dying intestate." The trust was created in 1896. It was known that two years before the date of the trust deed Frank and his wife had adopted an infant. In 1901 the donor made a will in which she left certain real property to Frank and his wife for life and upon their deaths to the adopted child absolutely. Thus, it is clear that the donor had knowledge of the adoption at the time of the creation of the trust, and, furthermore, the trust deed contained a reservation for a right to amend the same. It was not amended, although it appears that a similar trust deed for another son was amended under the reserved right. The expression " then next of kin " used in the deed is a significant recognition of the fact that the class of distributees might be changed from time to time to include or exclude adopted children, and indicates a willingness to have the selection made in accordance with the law in effect at the death of the beneficiary.

When Mrs. Morton made her will she had four children. One was married and had six children. Another was married and had five children. There was every probability that the other daughters would marry and have children. The grandchildren then in being and the prospective grandchildren would seem to have been as much objects of the beneficence of the testatrix as were her daughters. She provided a life income for each daughter with power to appoint not exceeding one-half the trust fund if she left no issue; she provided for the issue, if any survived, and specifically provided for the issue of any daughter who predeceased her. She set up limitations as to the surviving husband or wife of a grandchild. She made no reference to the laws of this State or any other jurisdiction providing for the distributions of estates of persons dying intestate. No adoption had been accomplished, and, apparently, the possibility thereof was not considered. There is nothing to indicate that she intended to include distributees as defined by the statute, but, on the contrary, used the expression " heirs at law and next of kin " in its primary meaning.

The will as a whole evidences an intention that at least one-half of the share set apart for the benefit of a daughter, on her death without issue, should go to her collateral relatives — her surviving sisters and the issue of any deceased sister — as her heirs at law and next of kin. These were the only persons whom the testatrix could have had in mind when the will was made.

Section 114 of the New York Domestic Relations Law provides that adopted children shall have all the rights of inheritance of natural children, with an exception which is set forth in the section as follows: " but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

Speaking of this exception, the trial court said: " The phrase used in the statute as to a foster parent ' dying without heirs ' is not an apt one. These words cannot have been intended to mean dying without leaving any one who might inherit. It has been construed to mean ' dying without children ' (*Von Beck* v. *Thomsen*, 44 App. Div. 373) and undoubtedly includes a provision in a will as to a life tenant dying without issue."

The appellants concede that they are not entitled to take as " issue," but they claim as " heirs at law " and maintain that they are, in fact, remaindermen whose rights are not to be defeated. To deny them the right to take as " children," but permit them to take as " heirs at law," would frustrate the purpose of the exception. We cannot believe that the Legislature intended such a result. The statute is aimed at the possibility of adopted children cutting off contingent remainders, and its purpose is to prevent this regardless of the capacity in which the adopted children claim. The declared limitation by the power of appointment over one-half of a daughter's trust share should not be thwarted long after the death of the testatrix by the expedient of the daughter's adopting children to take one-half by appointment and the other half as her heirs at law and next of kin.

The judgment so far as appealed from should be affirmed, with costs.

GLENNON and DORE, JJ., concur; O'MALLEY and UNTERMYER, JJ., dissent and vote to reverse and direct judgment in favor of the appellants.

O'MALLEY, J. (dissenting). The question here presented is whether adopted children of a life beneficiary under a testamentary trust in the will of Anna Livingston Morton take the remainder

as " heirs at law and next of kin " of said life tenant, or whether such remainder passes to her collateral relatives.

The testatrix died August 14, 1918, a resident of the District of Columbia, where her will, made January 15, 1916, and two codicils, executed July 8, 1916, were duly admitted to probate. Mary Morton, a daughter, was made the life beneficiary in one-fourth of the residuary estate, which included New York real property.

The will, so far as material, provided: " and upon the death of such child, I give, devise and bequeath her said share, to be equally divided among her issue, if any, living at her death, in equal shares, *per stirpes* and not *per capita*, and in default of such issue, to and among her heirs at law and next of kin, to be equally divided among them *per stirpes* and not *per capita*, subject, however, to the execution by my said child of the following powers hereby conferred upon her."

Mary Morton died April 20, 1932, a resident of Pennsylvania. She was unmarried and left no children of her body. She left surviving her two sisters and children of a deceased sister. They claim to be the heirs at law and next of kin within the meaning of her mother's will, and Special Term has so found.

Contesting their claim are Lewis Peter Morton, adopted by Mary Morton in Pennsylvania, June 17, 1925, and Miriam Morton, likewise adopted January 10, 1930. Another child, William Hazlett Minor, Jr. (formerly William Hayes Morton), adopted by Mary Morton in Pennsylvania, November 21, 1927, is also a contestant. He had been formally relinquished to a California institution for the purpose of adoption, on February 20, 1930, by William Hazlett Minor and his wife, residents of California.

Under a power of appointment in her mother's will, Mary Morton, by will dated May 5, 1930, admitted to probate in New York county November 23, 1932, set up a trust for this last adopted child and by the same power left one-half of the corpus of her trust estate for the benefit of the first two mentioned adopted children.

In our view the adopted children, Lewis Peter Morton and Miriam Morton, are heirs at law and next of kin within the meaning of the will of Anna Livingston Morton. In *Gilliam* v. *Guaranty Trust Co.* (186 N. Y. 127) a deed of trust was made for the life of one Frances J. Dyett, and after her decease to her heirs at law. This deed was made in 1853. Thirty years later, and in 1883, the life tenant, Frances J. Dyett, and her husband adopted Anna T. Gilliam, the plaintiff, as their child. The life tenant died in 1905 surviving her husband, but left no descendants

or issue. It was held that the adopted child came within the terms " heirs at law; " that the donor was presumed to have known that lines of inheritance are governed by statute and might change from time to time; and that under the clause in question his real concern was for the life tenant. Continuing, the court stated that the donor then " directed generally that it should go to her heirs at law; that is, to the persons whom the law should designate as her heirs when the time arrived. He threw the responsibility of selection upon the law. He took his chances upon the happening of just what did happen " (p. 138).

Again, in *United States Trust Co.* v. *Hoyt* (150 App. Div. 621), a deed of trust was made to husband and wife for life and, upon their death without issue, to the husband's next of kin. This court held that an adopted child took the entire remainder to the exclusion of the collateral relatives of the husband.

*Matter of Leask* (197 N. Y. 193) is readily distinguishable. There a life estate was given by a testator to his nephew for life and upon his death leaving a child or children him surviving, the principal was to go to them. It was further provided, however, that in the event the testator's nephew left no children surviving the corpus was to " revert to and become a part of " the residuary estate of the uncle. The remainder was not given to the heirs at law, but to the child or children of the life tenant. There was, moreover, a reversion to the residuary estate upon a contingency. Had the adopted child taken, the rights of the remaindermen (those entitled to the residuary estate) would have been defeated. The situation there was covered by section 114 of the Domestic Relations Law, which provides, so far as material, that while foster parents and the adopted child sustain towards each other the legal relation of parent and child with all the rights and duties of such relation, including the right of inheritance from each other, " as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of the remaindermen."

In the case before us the adopted children are the ultimate remaindermen. There is no remainder or reversion after they are brought within the purview of heirs at law and next of kin. Section 114 of the Domestic Relations Law, therefore, has no application.

The principle of *United States Trust Co.* v. *Hoyt* (*supra*), moreover, seems to have been recently approved (*Matter of Walter,*

270 N. Y. 201). In the case last cited an adopted child of a deceased devisee and legatee was held entitled to take as his child and lineal descendant.

Here, the testatrix, Anna Livingston Morton, as did the donor in *Gilliam* v. *Guaranty Trust Co.* (*supra*), knew that lines of inheritance might change from time to time. She was concerned with her daughter Mary for her life and then her issue, if any. Having made provision for them she otherwise desired that one-half of the corpus should go to whomsoever the law would designate.

" The only instance in which the adopted child is not deemed to be the child of the foster parent is where future estates may be cut off by such adoption." (*Matter of Horn*, 256 N. Y. 294, 297.) As already noted, no future estates were cut off by the adoption here.

We are of opinion also that the infant defendant, William Hazlett Minor, Jr., should share equally with the other two adopted children, though adopted by others, after Mary Morton relinquished all rights. New York real property is here involved, and the law of this jurisdiction is controlling. (Dec. Est. Law, § 47.)

In this State an adopted child inherits from both his natural and foster' parents. (Dom. Rel. Law, § 114.) If, as already stated, an adopted child has all the rights of a natural child (with the one exception above noted) it would seem to follow that he should inherit from the first adopting parent, as well as from the second. While no authority in this jurisdiction has been cited or called to our attention, this conclusion has been reached elsewhere. (*Dreyer* v. *Schrick*, 105 Kan. 495; 185 P. 30; *Patterson* v. *Browning*, 146 Ind. 160; 44 N. E. 993; *Holmes* v. *Curl*, 189 Iowa, 246; 178 N. W. 406; *Matter of Sutton*, 161 Minn. 426; 201 N. W. 925.)

It follows, therefore, that the judgment, so far as appealed from, should be reversed, with costs, and judgment entered in favor of the defendants-appellants, with costs.

UNTERMYER, J., concurs.

Judgment, so far as appealed from, affirmed, with costs.